CLARKSON, J., concurring in the result.
Each of the defendants fired his pistol, several times, at an automobile in which deceased and two other boys were riding, after the automobile has passed defendants, on a public road in Surry County. A bullet fired by defendant, R. F. Simmons, entered the head of deceased, behind his ear, and inflicted the fatal wound. Both defendants had fired at the automobile with their pistols as it approached *Page 693 
them, and both continued to fire at it after it had passed them. Each defendant fired with the same motive, both with a common purpose, to wit, to stop the three boys who were in the automobile, in order that they might search it and ascertain whether or not they were transporting intoxicating liquor in violation of the laws of this State, and if so, to arrest them.
Both defendants were at the time deputy sheriffs of Surry County. In consequence of information which they had received, they had stood by the roadside, awaiting the approach of the automobile. They suspected that its occupants had gone across the State line into Virginia for intoxicating liquor, and were returning to Mount Airy, or its vicinity, with intoxicating liquor in the automobile. Neither of defendants had a warrant for the arrest of deceased or of his companions, or for the search of the automobile. Neither of the defendants had any personal knowledge that either of the boys was violating the law, or that there was any intoxicating liquor in the automobile, when they began firing their pistols for the purpose of causing the driver to stop. Defendants knew that the boys in the automobile had reputations for dealing in liquor, and suspected that they were then transporting liquor in the automobile.
They knew two of the boys, Johnny and Melvin Joyce, personally, and knew where they lived in Surry County. They had been informed that deceased, Jim Sutphen, had gone with the other boys on their trip to get intoxicating liquor. Each of these boys was about twenty years of age — two of them married. Deceased lived with his uncle, who operated a sawmill and gristmill, about three miles from Mount Airy, on Route No. 80 of the State highway system. All of them could easily have been apprehended at their homes in Surry County if they were violating the law.
Both Johnnie and Melvin Joyce testified that there was no liquor in the automobile when defendants undertook to stop them by firing their pistols. There was evidence that their general character for truth and honesty were good, but that they were "rough boys," and were suspected of handling liquor. There was no evidence at the trial that either of the boys was violating the law in any respect or that there was intoxicating liquor in the automobile when defendants attempted to search the automobile and to arrest the occupants.
Defendants testified that they stepped from the side of the road, where they had been standing, in front of the automobile, and called to the driver to stop; that the driver did not stop, but increased his speed; that they both then fired at the automobile; that the driver attempted to drive over defendant Simmons, and that after the automobile had passed them, each fired several times for the purpose of shooting the *Page 694 
tires, and thus causing the driver to stop. Johnnie Joyce, who was driving the automobile, testified that neither of defendants called to him to stop before they both fired. His brother, Melvin Joyce, corroborated him. There was evidence that both defendants are men of good character.
There was no exception to the admission or exclusion of testimony as evidence which we deem it necessary to discuss. There is no conflict in the evidence upon essential matters. The evidence is plenary that a bullet fired by defendant Simmons, while engaged in an unlawful act, caused the death of deceased, and that defendant Smith was present not only aiding and abetting defendant Simmons, but actively participating in the unlawful act. The evidence fails to show any facts which justify or excuse defendants. The defense urged in behalf of defendants, either that the pistols were fired by them in self-defense, or that defendants were justified in shooting because they were officers undertaking to make a lawful arrest or a lawful search of the automobile cannot be sustained by the evidence. We find no error in the full and careful charge of his Honor to the jury. Assignments of error based upon exceptions duly taken thereto, are not supported by the law.
Section 6 of ch. 1, Public Laws 1923, known as The Turlington Act, 3 C. S., 3411(f), contains the following words:
"Nothing in this section shall be construed to authorize any person to search any automobile or other vehicle or baggage of any person without a search warrant duly issued, except where the officer sees or has absolute personal knowledge that there is intoxicating liquor in such vehicle or baggage." See S. v. Godette, 188 N.C. 497. In the absence of a search warrant, or of absolute personal knowledge that there is intoxicating liquor in the automobile, defendant's attempt to search it was without authority of law. Defendants had neither a search warrant nor absolute personal knowledge, required by the statute for a lawful search of the automobile for intoxicating liquor.
In S. v. Sigman, 106 N.C. 728, in the opinion written by Avery, J., the law is stated to be as follows: "An officer who kills a person charged with a misdemeanor while fleeing from him is guilty of manslaughter at least. 1 Wharton Crim. Law, sec. 5 (9 ed.); 2 Bishop Crim. Law (7 ed.), sec. 649. After an accused person has been arrested, an officer is justified in using the amount of force necessary to detain him in custody, and he may kill his prisoner to prevent his escape, provided it becomes necessary, whether he be charged with a felony or misdemeanor. But where a prisoner charged with a misdemeanor has already escaped, the officer cannot lawfully use any means to recapture him that he would not have been justified in employing in making the first arrest; and if in the pursuit he intentionally killed the accused, *Page 695 
it is murder; and if it appear that death was not intended, the offense will be manslaughter." See S. v. Dunning, 177 N.C. 559. The law will protect an officer who is attempting to make a lawful arrest or to make a lawful search, from consequences of his acts done necessarily in the performance of his duty. This principle cannot be invoked, however, in defense of an officer who is attempting to make an unlawful arrest or an unlawful search, commits an assault, with or without a deadly weapon. For the consequences of his unlawful acts, he must be held responsible to the same extent and with the same result as others who do not profess to act under the law. Defendants in this case were without authority to arrest deceased or either of his companions in the automobile. They had no warrant authorizing the arrest; no crime had been committed in their presence. They were acting solely upon suspicion, which however well founded they thought it to be, appeared at the trial groundless. The law is no respecter of persons — it holds those who profess to act in its name amenable to its requirements; it seeks to protect even those who may have previously violated its provisions when their rights are put in jeopardy by accusation of crime. It exacts of all men obedience to its mandates, and assures all men — even those suspected of crime — of its protection. No man ought to be deprived of life, liberty or property, except in accordance with its provisions. The judgment is affirmed. There is
No error.