ROSALYN GLENN-ROBINSON, Plaintiff v. ROBERT CHARLES ACKER; CITY OF DURHAM, NORTH CAROLINA, Defendants

Nos. COA99-894, COA99-1116

(Filed 5 December 2000)

1. Civil Rights— section 1983 claim—off-duty officer—false arrest—freedom to leave—issue of fact

Summary judgment should not have been granted for defendant Acker on a 42 U.S.C. § 1983 claim for false arrest where Acker was an off-duty police officer who became involved in a confrontation with a school bus driver and the driver brought an action including a section 1983 claim and state claims for assault and battery, false imprisonment, and violation of state constitutional rights. There were genuine issues of fact as to whether a reasonable person would have felt free to leave and whether plaintiff was arrested rather than merely seized.

2. Civil Rights— section 1983 claim—off-duty officer—false arrest—probable cause—issue of fact

Summary judgment should not have been granted for defendant Acker on a 42 U.S.C. § 1983 claim for false arrest where Acker was an off-duty police officer who became involved in a confrontation with a school bus driver. The existence of probable cause was an issue of fact because Acker originally stated that plaintiff was under arrest for violation of a city ordinance prohibiting stopping in a street so as to impede traffic, but officers are not empowered to arrest for infractions. Acker later contended that he had probable cause to arrest for the misdemeanor violation of willfully failing to comply with a lawful order by a law enforcement officer, but the trier of fact could reasonably infer that plaintiff did not know that Acker was an officer; an officer may not assume that others will know he is a police officer where he simply states as much and flashes "something," while wearing civilian clothing, working off-duty, and acting "out of control."

3. Civil Rights— section 1983 claim—off-duty officer—false arrest—qualified immunity

Summary judgment should not have been granted for defendant Acker on the basis of qualified immunity on a 42 U.S.C. § 1983 claim for false arrest where Acker was an off-duty police officer who became involved in a confrontation with a school bus driver,

and plaintiff's right to be free from an unconstitutional arrest was clearly established under plaintiff's version of the facts, but whether the incident occurred in the manner described by plaintiff was in dispute.

**4. Civil Rights— section 1983 claim—off-duty officer—excessive force**

Summary judgment should not have been granted for defendant Acker on a 42 U.S.C. § 1983 claim for excessive force where Acker was an off-duty police officer who became involved in a confrontation with a school bus driver and there were genuine issues of material fact as to whether the incident occurred in the manner described by plaintiff and regarding the existence of probable cause. If no probable cause existed for the arrest, then any use of force was unlawful.

**5. Assault and Battery; False Imprisonment— off-duty officer—probable cause—issue of fact**

Summary judgment should not have been granted for defendant Acker on state claims for assault and battery and false imprisonment where Acker was an off-duty police officer who became involved in a confrontation with a school bus driver. The trier of fact should decide the reasonableness of Acker's belief that defendant had committed a criminal offense and whether he was entitled to use any force against plaintiff. Without probable cause, Acker loses the benefit of N.C.G.S. § 15A-401(d) and any use of force becomes at least a technical assault and battery.

**6. Police Officers— off-duty—assault and false imprisonment—immunity**

Defendant Acker, an off-duty police officer, was not protected by the doctrine of official immunity from state claims of assault and false imprisonment arising from a confrontation with a school bus driver where plaintiff forecast sufficient evidence of malice and actions outside the scope of Acker's official duties.

**7. Civil Rights— section 1983 claim—off-duty officer—action against city—practice and custom**

The trial court properly granted defendant-city's motion for summary judgment on 42 U.S.C. § 1983 claims arising from a confrontation between an off-duty police officer and a school bus driver where plaintiff provided competent evidence of only one

other incident in which no officers were disciplined for a false arrest or the use of excessive force against a citizen. A municipality cannot be held liable under section 1983 unless action pursuant to official municipal policy or custom caused a constitutional tort, and this single episode is insufficient to constitute the widespread and permanent practice necessary to establish municipal custom.

**8. Constitutional Law— right to free speech—adequate state remedies**

Summary judgment was properly granted for defendant-city on state constitutional claims arising from a confrontation between an off-duty police officer and a school bus driver where plaintiff brought a free speech claim, but nothing indicates that plaintiff's right to free speech was violated in any way, and adequate state remedies existed on the other claims.

**9. Costs— attorney fees—section 1983 claim**

An award of costs in an action arising from a confrontation between an off-duty police officer and a school bus driver did not include attorney fees where the trial court did not find that the action was frivolous, unreasonable, or brought without foundation, as required by 42 U.S.C. § 1983, and there was no indication that the City moved for an award of attorney fees.

**10. Evidence— judicial notice—police department regulations**

The trial court correctly denied plaintiff's motion for partial summary judgment where plaintiff asked the court to take judicial notice that officers had no authority to arrest for a motor vehicle infraction, that defendant, an off-duty officer, had no authority to arrest plaintiff for a motor vehicle infraction, and that Durham Police Department rules stated that off-duty officers in their private vehicles should not stop motorists for traffic violations. North Carolina courts may not take judicial notice of municipal ordinances, much less police department regulations, and the remaining "facts" are best characterized as legal conclusions, which are not a proper subject for judicial notice. N.C.G.S. § 8C-1, Rule 201.

Appeal by plaintiff from order filed 18 March 1999, order and judgment filed 19 April 1999, order filed 23 June 1999, and order and judgment filed 24 June 1999 by Judge Orlando F. Hudson, Jr., in Durham County Superior Court. Heard in the Court of Appeals 10 May 2000.

*Alexander Charns and Karen Bethea-Shields for plaintiff-appellant.*

*Newsom, Graham, Hedrick & Kennon, P.A., by Joel M. Craig and Thomas H. Lee, Jr., for defendant-appellee Robert Charles Acker.*

*Faison & Gillespie, by Reginald B. Gillespie, Jr. and Keith D. Burns, and Patrick W. Baker, for defendant-appellee City of Durham.*

SMITH, Judge.

Plaintiff Rosalyn Glenn-Robinson appeals the trial court's grant of summary judgment in favor of defendants Robert Charles Acker (Acker) and the City of Durham (the City). We affirm in part, reverse in part, and vacate in part the orders and judgments of the trial court.

This action arises out of a 7 May 1996 incident between plaintiff and Acker. At the time of the incident, Acker, a Durham city police officer, was working a second job as a truck driver for C.F. Corporation and had just made a delivery to Club Boulevard Elementary School (the school). Plaintiff, a school bus driver, was sitting in the driver's seat of her parked school bus in front of the school. According to plaintiff, Acker, dressed in street clothes, yelled at plaintiff, ordered her to move her school bus, and flashed "something" at her; when plaintiff did not move the bus, Acker "boarded the [p]laintiff's school bus, told her she was under arrest, grabbed her arm and unbuckled her seatbelt."

Plaintiff filed suit on 10 December 1997 pursuant to 42 U.S.C. § 1983 (1994), alleging that Acker's actions violated plaintiff's Fourth Amendment rights and that the City, "by way of its pattern, practice, custom or usage condoned or was deliberately indifferent to [its] officers' violations of the Fourth Amendment and Fourteenth Amendment to the United States Constitution." In her complaint, plaintiff detailed ten "example[s] of the pattern, practice, custom or usage" of the City that she alleges "foster and allow an atmosphere of repression and lawlessness by not punishing police officers who assault, batter, or violate the Fourth Amendment rights of Durham residents."

Plaintiff also alleged the City violated her rights guaranteed under Article I, §§ 14, 19, 20, 21, 35 and 36 of the North Carolina

Constitution and that Acker committed the torts of assault and battery and false imprisonment. Plaintiff sought compensatory and punitive damages and counsel fees. According to the original complaint, Acker was sued only in his individual capacity.

Acker filed an answer on 10 February 1998, admitting "that he demonstrated his police badge to [p]laintiff, unbuckled her seatbelt, touched her on the arm and told her she was under arrest," but denying that such actions violated plaintiff's constitutional rights and asserting the defenses of qualified immunity and governmental immunity as bars to plaintiff's claims. The City answered on 11 February 1998, generally denying plaintiff's allegations and asserting the defense of governmental immunity.

On 26 February 1999, plaintiff filed a "Motion for Partial Summary Judgment . . . and/or Request for the Court to Take Judicial Notice," which was denied on 18 March 1999. Plaintiff filed a motion *in limine* on 13 April 1999 requesting that Acker be judicially estopped "from claiming new, alternative grounds for his seizure and arrest of [p]laintiff." The record on appeal does not reflect that this motion was ruled on by the trial court.

On 24 March 1999, Acker moved for summary judgment, which was granted 19 April 1999. Plaintiff timely appealed the trial court's orders granting Acker's motion for summary judgment and denying her partial summary judgment motion.

The City moved to supplement its answer on 26 April 1999 to assert the defense of *res judicata*, in that the trial court's order granting summary judgment in favor of Acker "negate[d] essential elements of [p]laintiff's purported claims against the City"; it moved for summary judgment on 21 May 1999. The City's motions were granted on 21 and 24 June 1999, respectively. Plaintiff timely appealed both rulings.

This Court, *ex mero motu*, consolidated plaintiff's appeals for argument and decision. *See* N.C. R. App. P. 40 ("actions which involve common questions of law may be consolidated for hearing . . . upon the initiative of th[e] court").

### I. *Plaintiff's claims against Acker*

Plaintiff first argues the trial court erred in granting Acker's motion for summary judgment because "there were genuine material

issues of fact in dispute." A motion for summary judgment is properly granted when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

N.C.G.S. § 1A-1, Rule 56(c) (1999). A defendant moving for summary judgment bears the burden of showing either that (1) an essential element of the plaintiff's claim is nonexistent; (2) the plaintiff is unable to produce evidence that supports an essential element of her claim; or, (3) the plaintiff cannot overcome affirmative defenses raised in contravention of her claims. *See Lyles v. City of Charlotte*, 120 N.C. App. 96, 99, 461 S.E.2d 347, 350 (1995), *rev'd on other grounds*, 344 N.C. 676, 477 S.E.2d 150 (1996). In ruling on such motion, the trial court must view all evidence in the light most favorable to the non-movant, taking the non-movant's asserted facts as true, and drawing all reasonable inferences in her favor. *See Kennedy v. Guilford Tech. Community College*, 115 N.C. App. 581, 583, 448 S.E.2d 280, 281 (1994).

The trial court's order granting summary judgment in favor of Acker read in pertinent part:

> [T]he Court finds and concludes that the forecast of evidence demonstrates:
>
> 1. That [Acker] did not violate Plaintiff's rights under the United States or North Carolina Constitutions, for the reasons, *inter alia*, that
>
> > a. [Acker] did not arrest or seize Plaintiff . . . , and/or
> >
> > b. Even if any such arrest or seizure occurred, such arrest or seizure was reasonable and supported by probable cause, and
> >
> > c. [Acker] did not use excessive force against Plaintiff;
>
> 2. That [Acker] did not commit . . . false imprisonment, assault and/or battery against the Plaintiff; and
>
> 3. In the alternative, that [Acker] is entitled to judgment on all claims herein asserted under the doctrines of qualified immunity under federal law and governmental officer immunity under North Carolina law.

Preliminarily, we agree with plaintiff that her "amended complaint alleged no North Carolina [c]onstitutional claims against . . . Acker in his individual capacity." Plaintiff's amended complaint alleged only that the City, "through . . . Acker *in his official capacity*, violated the rights guaranteed to the plaintiff under" various sections of the North Carolina Constitution. It was thus improper for the trial court to include a reference to plaintiff's state constitutional claims in its order granting summary judgment in favor of Acker.

### A. *Section 1983 claim—False arrest*

[1] We next address *seriatim* plaintiff's federal claims of false arrest and excessive force brought against Acker in his individual capacity. Plaintiff alleged in her complaint that Acker "subjected [her] to excessive force, [and] arrested [her] and threatened [her] in violation of the Fourth Amendment to the United States Constitution," thus establishing a cause of action under section 1983. Before proceeding, we note that although plaintiff has filed suit pursuant to a federal statute in state court, "plaintiff's relief, if any, will be the same that she might have in a federal court under" section 1983. *Truesdale v. University of North Carolina*, 91 N.C. App. 186, 197, 371 S.E.2d 503, 510 (1988), *overruled on other grounds by Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276 (1992).

Section 1983 provides:

Every person who, under color of any statute,[1] ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. Two categories of police-citizen encounters implicate Fourth Amendment protection:

investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity, and [] arrests, the most

---

1. Neither Acker nor the City has argued to this Court that Acker was not acting under color of law at the time of the incident, as required to impose liability pursuant to section 1983. Thus, we do not address the issue.

intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause.

*United States v. Bloom,* 975 F.2d 1447, 1450-51 (10th Cir. 1992) (citations omitted), *overruled in part on other grounds by United States v. Little,* 18 F.3d 1499 (10th Cir. 1994).

### 1. *Was plaintiff seized?*

Acker argues summary judgment was proper on plaintiff's false arrest claim because "no arrest or seizure actually occurred." "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509 (1980).

In her deposition, plaintiff described the events surrounding the incident as follows: Plaintiff drove her bus to the school to wait for the children to be dismissed. A tractor-trailer was double-parked, requiring plaintiff to maneuver around it before parking her bus. Cars also were parked along the curb where plaintiff usually parked, causing plaintiff to stop the bus in the travel lane of the roadway. Plaintiff testified that as she was waiting for the children, Acker

tapped on the window, and I slid it back. And he said, "You need to move this bus." I said, "Well, as soon as these other cars move, I'll move."

. . . .

. . . Acker said, "You need to move this bus now."

And I replied again, "As soon as these cars move." So he was getting a little out of sorts. So I shut the window.

. . . .

. . . [Next, Acker came a]round the front of the bus and banged on the door. And I opened the door, and he said, "I'm a police officer. You need to move this bus now." And he flashed a badge.

Q When you say "flashed," tell me what you mean.

A He just got—he pulled something out and flipped it over.

Q Were you able to tell it was a badge of some kind?

A    No. . . . [After] that point, he just got out and just lost it.

. . . .

. . . He went to screaming and hollering, "You need to move this bus. I've got freight to unload. I'm a police officer. I can arrest you for obstructing traffic." And at that time he boarded the bus.

Plaintiff testified that until this point, Acker had been standing "down at the bottom of the steps." Next, Acker

boarded the bus, and he said, "I can arrest you for obstructing traffic." He said, "You are under arrest." He reached over, put his hand on my arm and reached over and unbuckled the seat belt.

Acker then asked plaintiff to "get up," but she refused. According to plaintiff, Acker was "no more than a f[oo]t, f[oo]t and a half" away from her at this time, and she "was trapped in [her seat]. He was between [her] and the entrance to the bus."

Plaintiff testified that Acker's touching of her arm did not hurt, did not leave any marks, and lasted just "[l]ong enough to unbuckle the seat belt." When plaintiff asked him to remove his hand, he complied and "backed off," ending the incident. When asked if she tried to leave the bus during the incident, plaintiff answered that she "didn't move. [She] didn't even try." In a later affidavit, plaintiff testified she "was trapped behind the wheel [and] couldn't move because [Acker] was right next to [her]."

Taking the facts in the light most favorable to plaintiff, *See Kennedy*, 115 N.C. App. at 583, 448 S.E.2d at 281, we find plaintiff's evidence sufficient for the trier of fact to find that "a reasonable person would have believed that he was not free to leave," *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, thus establishing a seizure under the Fourth Amendment, *see id.* It was thus improper for the trial court to grant Acker's motion for summary judgment on the basis that a seizure did not occur.

There is also a genuine issue of material fact as to whether plaintiff was not merely seized, but was in fact arrested. "A seizure becomes an arrest when 'a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with

formal arrest.' " *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999) (quoting *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988)). Although our Supreme Court has held, "One is not arrested until law enforcement officers significantly restrict his freedom of action," *State v. Simpson*, 303 N.C. 439, 445, 279 S.E.2d 542, 546 (1981), the United States Supreme Court has held, "[T]he mere grasping or application of physical force with lawful authority, whether or not it succeed[s] in subduing the arrestee, [i]s sufficient" to constitute an arrest, *California v. Hodari D.*, 499 U.S. 621, 624, 113 L. Ed. 2d 690, 696 (1991).

Acker admitted in his answer "that he demonstrated his police badge to [p]laintiff, unbuckled her seatbelt, touched her on the arm and told her she was under arrest," and testified in his deposition that after the incident, he told plaintiff's supervisor he had placed plaintiff under arrest. Although Acker exited plaintiff's bus and did not take her into custody, his "application of physical force," *id.*, coupled with his proclamation that plaintiff was under arrest and plaintiff's allegations that her exit was blocked, raise at least a genuine issue of material fact as to whether plaintiff was "arrested" for purposes of the Fourth Amendment.

## 2. *Did Acker have probable cause to arrest plaintiff?*

**[2]** "The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause." *Rogers v. Powell*, 120 F.3d 446, 452 (3rd Cir. 1997). Thus, if probable cause to arrest plaintiff was not present in the case at bar, "the arrest was unlawful and violated [plaintiff's] Fourth Amendment right to be free from unlawful seizures." *Id.* at 454; *see also Burton v. City of Durham*, 118 N.C. App. 676, 682, 457 S.E.2d 329, 333 (1995) ("[E]xistence of probable cause is an absolute bar to a civil rights claim for false arrest."). According to plaintiff, Acker informed her he was placing her under arrest for impeding or obstructing traffic.

Section 20-90(11) of the Durham City Code provides that "[n]o person shall stop, stand or park a vehicle . . . [u]pon the travel portion of the roadway or street such that said vehicle obstructs or impedes the flow of vehicular traffic." Durham, N.C., Code § 20-90(11) (1985). A violation of a city ordinance "regulating the operation or parking of vehicles" is an "infraction." N.C.G.S. § 14-4(b) (1999).

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *Michigan v. DeFillippo*,

443 U.S. 31, 36, 61 L. Ed. 2d 343, 348-49 (1979). A police officer may only arrest a person without a warrant in this state if that officer "has probable cause to believe [that person] has committed a *criminal offense* in the officer's presence." N.C.G.S. § 15A-401(b)(1) (1999) (emphasis added). An infraction, however, is a "noncriminal violation of law," N.C.G.S. § 14-3.1 (1999), such that officers are not empowered to arrest for its violation. *See* Robert L. Farb, *Arrest, Search and Investigation in North Carolina* 56 (2d ed. 1992); *see also United States v. Watson*, 423 U.S. 411, 418, 46 L. Ed. 2d 598, 606 (1976) ("[C]ases construing the Fourth Amendment . . . reflect the ancient common-law rule that a peace officer [i]s permitted to arrest without a warrant for a *misdemeanor or felony* committed in his presence . . . if there [i]s reasonable ground for making the arrest."). Thus, assuming *arguendo* plaintiff did violate section 20-90, Acker could not arrest her for such an infraction.

Acker contends summary judgment was proper in that he had probable cause to arrest plaintiff pursuant to N.C.G.S. § 20-114.1(a) (1999), which provides "[n]o person shall willfully fail or refuse to comply with any lawful order or direction of any law-enforcement officer . . . which order or direction [is] related to the control of traffic." Violation of section 20-114.1(a) is a misdemeanor, *see* N.C.G.S. § 20-176(a) (1999), such that an officer may make a warrantless arrest if the officer has probable cause to believe the violation was committed in his presence, *see* G.S. § 15A-401(b)(1); *see also State v. Brooks*, 337 N.C. 132, 145, 446 S.E.2d 579, 588 (1994) (holding that officer may make warrantless arrest for misdemeanor committed in his presence).

Our courts have never addressed the issue herein presented—whether a police officer who states that a person is under arrest for one violation may later justify that arrest by reference to another violation. However, we agree with the approach taken by the Fifth Circuit in similar circumstances. In *Trejo v. Perez*, 693 F.2d 482, 484 (5th Cir. 1982), the defendant-officer, Perez, arrested the plaintiff, Trejo, for disorderly conduct, but later asserted Trejo had violated the Texas "Stop and Identify" statute, Tex. Penal Code Ann. § 38.02. Trejo filed suit for false arrest under section 1983. The jury found that Perez had no probable cause to believe Trejo had committed the offense of disorderly conduct; Perez sought to avoid liability by claiming he had probable cause to arrest Trejo for violation of section 38.02. *Id.*

The *Trejo* court held that the question to be resolved was

> whether the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated reasonable officer, also have served as the basis for a charge for which there was probable cause.

*Id.* at 486; *see also Graham v. Connor*, 490 U.S. 386, 397, 104 L. Ed. 2d 443, 456 (1989) ("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). The court found that Trejo's use of vulgar language in a public place gave rise to the disorderly conduct charge and that Trejo's use of vulgar language in response to Perez' request for identification may have permitted Trejo's arrest under section 38.02; thus, the court concluded, the two offenses "were sufficiently related that an objective police officer might have charged the offense of failure to identify." *Trejo*, 693 F.2d at 486.

In the case *sub judice*, plaintiff could not have been legally arrested for violation of section 20-90. Acker attempted to arrest plaintiff for that infraction based on plaintiff's parking of the bus in the travel lane of the road. The offense for which Acker argues he had probable cause to arrest plaintiff—disobeying a traffic order of a law enforcement officer, *see* G.S. § 20-114.1(a)—was based on plaintiff's refusal to move her bus from the travel lane. Thus, as in *Trejo*, the offenses are sufficiently related so that Acker may seek to justify his arrest of plaintiff under G.S. § 20-114.1(a).[2] *See Foster v. Metropolitan Airports Com'n*, 914 F.2d 1076, 1079 (8th Cir. 1990) (holding that officer's "subjective reason for making the arrest is irrelevant to a fourth amendment challenge to the arrest").

Acker argues that because plaintiff refused to move her bus when he ordered her to do so, he had probable cause to arrest her for violation of G.S. § 20-114.1(a).

---

2. Plaintiff filed a motion *in limine* with the trial court requesting that Acker be judicially estopped "from claiming [G.S. § 20-114.1(a) as a] new, alternative ground for his seizure and arrest of [p]laintiff." Plaintiff alleges that Acker did not seek to justify his conduct pursuant to G.S. § 20-114.1(a) until 1999, approximately three years after the incident in question. *See* G.S. § 15A-401(c)(2) (an officer, "[u]pon making an arrest, . . . must . . . [a]s promptly as is reasonable under the circumstances, inform the arrested person of the cause of the arrest"). However, the record on appeal indicates this motion was not ruled on by the trial court, and we therefore may not review the merits of the motion. *See* N.C. R. App. P. 10(b)(1) (to preserve question for appellate review, party must "obtain a ruling upon [its] . . . motion").

Probable cause is defined as "those facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information which are sufficient to warrant a prudent [person] in believing that the suspect had committed or was committing an offense."

In examining the facts and circumstances known to the officer[] at the time of the arrest to determine whether summary judgment was proper[] . . . , we must view the evidence in the light most favorable to plaintiff.

*Davis v. Town of Southern Pines*, 116 N.C. App. 663, 671-72, 449 S.E.2d 240, 245 (1994) (citation omitted).

Plaintiff testified by way of affidavit that

[o]n May 7, 1996, . . . Acker was dressed in short pants and a t-shirt. At times he claimed he was driving a truck and had freight to unload. Other times he claimed he was a police officer and flashed something quickly. He did not act like a police officer. He was completely out of control, and very angry. I believed at the time he was high on drugs. He was yelling and waving his arms.

In his deposition, Acker testified he was wearing shorts, a plain t-shirt, and boots on the date of the incident, and when he was speaking with plaintiff at the window of her bus, he "produced [his] police ID and . . . tried to get [plaintiff's] attention that [he] was a police officer. And [plaintiff] totally ignored [him]." Acker further testified that plaintiff continued to "ignore[]" him after he boarded her bus.

Viewed in the light most favorable to plaintiff, *see Kennedy*, 115 N.C. App. at 583, 448 S.E.2d at 281, the facts tend to show that plaintiff was approached by an "angry," "out of control" man wearing shorts, a plain t-shirt, and boots. The man "flashed something" at her "quickly"; asserted he was both a truck driver and a police officer; boarded her bus; ordered her to move her bus; grabbed her arm, unfastened her seatbelt, and told her she was under arrest; then exited her bus without writing her a citation or formally taking her into custody. At no point did plaintiff acknowledge Acker's status as a police officer, and, according to Acker's own testimony, plaintiff was not looking in his direction when he attempted to show her his badge at the window of the bus.

Under these circumstances, we believe the trier of fact could reasonably infer plaintiff did not know Acker was a "law-enforcement officer," G.S. § 20-114.1(a), and in fact may have believed he was a civilian masquerading as an officer in an attempt to get her to move the bus. To violate G.S. § 20-114.1(a), plaintiff must have "willfully" disobeyed a "lawful order"[3] of a "law-enforcement officer." The word "willfully" means "something more than an intention to commit the offense." *State v. Stephenson*, 218 N.C. 258, 264, 10 S.E.2d 819, 823 (1940). "It implies committing the offense purposely and designedly in violation of law." *Id.* Thus, to *willfully* disobey an order under G.S. § 20-114.1(a), plaintiff must have known or had reasonable grounds to know Acker was a law enforcement officer. *See State v. Avery*, 315 N.C. 1, 30, 337 S.E.2d 786, 803 (1985) (stating that in prosecution for "assault with a firearm on a law enforcement officer," State must prove defendant "knew or had reasonable grounds to know" victim was a law enforcement officer); *State v. Rowland*, 54 N.C. App. 458, 462, 283 S.E.2d 543, 546 (1981) (holding that in prosecution for assault on a law enforcement officer, State must prove defendant knew victim was a law enforcement officer).

Although an officer giving an order knows that he is in fact an officer, to find probable cause to arrest a suspect for violation of G.S. § 20-114.1(a), the officer must evaluate whether the *suspect* knows the person giving the order is a law enforcement officer. Probable cause exists only if a reasonable officer could believe plaintiff knew the officer's status as such. *See Davis*, 116 N.C. App. at 671, 449 S.E.2d at 245. We are not prepared to hold that an officer in these circumstances—wearing civilian clothing, working off-duty at a second job, and acting "out of control"—may assume that others will know he is a police officer simply if he states such and flashes "something" at someone who is admittedly "ignor[ing]" him. We also emphasize that plaintiff never acknowledged Acker's status as a police officer by way of words or action.

> The existence or nonexistence of probable cause is a mixed question of law and fact. If the facts are admitted or established, it is a question of law for the court. Conversely, when the facts are in dispute the question of probable cause is one of fact for the jury.

*Pitts v. Pizza, Inc.*, 296 N.C. 81, 87, 249 S.E.2d 375, 379 (1978) (citations omitted). As there are material facts in dispute *sub judice*, such

---

3. We assume without deciding that Acker's order was "lawful."

as whether plaintiff ever saw Acker's badge and whether Acker's demeanor at the time of the incident was "out of control" and not indicative of an officer, as plaintiff testified, or "professional," as Acker testified in his deposition, we hold the existence of probable cause is an issue for the trier of fact. The trial court's grant of summary judgment on this basis was thus improper.

### 3. *Is Acker entitled to the defense of qualified immunity?*

[3] Acker also was not entitled to summary judgment on plaintiff's federal false arrest claim on the grounds of qualified immunity.

> "The test of qualified immunity for police officers sued under [section 1983] is whether [the officers' conduct violated] clearly established statutory or constitutional rights of which a reasonable person would have known." In ruling on the defense of qualified immunity we must: (1) identify the specific right allegedly violated; (2) determine whether the right allegedly violated was clearly established at the time of the violation; and (3) if the right was clearly established, determine whether a reasonable person in the officer's position would have known that his actions violated that right. The first two determinations are questions of law for the court and should always be decided at the summary judgment stage. However, "the third [determination] . . . require[s] [the factfinder to make] factual determinations [concerning] disputed aspects of the officer[s'] conduct."

*Davis*, 116 N.C. App. at 670, 449 S.E.2d at 244. The right allegedly violated herein was plaintiff's Fourth Amendment "right not to be arrested without probable cause," *Roberts v. Swain*, 126 N.C. App. 712, 719, 487 S.E.2d 760, 765 (1997), for violation of G.S. § 20-114.1(a). The right to be free from false arrest is "clearly established" for purposes of this analysis "if probable cause is lacking." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992).

Before proceeding, we must distinguish our analysis on this element of the qualified immunity test from our analysis of the propriety of summary judgment based on the trial court's finding that Acker had probable cause to arrest plaintiff. We first note that if probable cause to arrest plaintiff was present as a matter of law, summary judgment should have been entered in favor of Acker, and the issue of whether Acker is entitled to qualified immunity would not arise. *See Burton*, 118 N.C. App. at 682, 457 S.E.2d at 333. However, summary judgment is improper if genuine issues of material fact are

present. As we discussed above, plaintiff and Acker present such different versions of the facts that summary judgment is inappropriate on the issue of whether probable cause to arrest plaintiff existed. The trier of fact must determine exactly what transpired and, based on those facts, determine if probable cause existed.

However, when determining whether a right is "clearly established" for purposes of qualified immunity, the trial court essentially assumes the facts are as the plaintiff alleges, thus removing any fact issue from the analysis. See Davis, 116 N.C. App. at 670-72, 449 S.E.2d at 244-45 (In determining whether probable cause existed for purposes of qualified immunity analysis, "we must view the evidence in the light most favorable to plaintiff;" determination is question of law for the trial court.); see also Kennedy, 115 N.C. App. at 583, 448 S.E.2d at 281 (holding that on summary judgment, must take nonmovant's asserted facts as true). On plaintiff's view of the facts, Acker did not have probable cause to believe plaintiff knew he was a law enforcement officer, see Avery, 315 N.C. at 30, 337 S.E.2d at 803; thus, Acker did not have probable cause to arrest plaintiff for violation of G.S. § 20-114.1(a), and plaintiff's right to be free from arrest under these facts was clearly established, see Pritchett, 973 F.2d at 314.

To summarize, we hold as a matter of law that plaintiff's right to be free from an unconstitutional arrest was clearly established under plaintiff's version of the facts. See Davis, 116 N.C. App. at 670, 449 S.E.2d at 244 (first two prongs of qualified immunity test are "questions of law for the court"). Thus, we must next examine the third prong of the qualified immunity test to determine whether Acker is entitled to qualified immunity. See id.

When reviewing this third prong, we must ask "whether the conduct at issue actually occurred and if so, whether a reasonable officer would have known that his conduct would violate that right." Id. at 672-73, 449 S.E.2d at 246. However, "[i]f there are genuine issues of historical fact respecting the officer's conduct or its reasonableness under the circumstances, summary judgment is not appropriate" on this prong of the test. Pritchett, 973 F.2d at 313. Again, as discussed above, certain facts sub judice are in dispute, such as whether plaintiff was given sufficient opportunity to view Acker's badge and whether Acker's conduct towards plaintiff was "out of control" or "professional." The "third inquiry [therefore] cannot be answered on summary judgment" in the case at bar. Davis, 116 N.C. App. at 673,

449 S.E.2d at 246. Summary judgment was thus inappropriate on the basis that Acker was entitled to qualified immunity.

### B. *Section 1983 claim—Excessive force*

[4] We now turn to plaintiff's federal claim of excessive force. Acker contends, as the trial court found in its order, that he "did not use excessive force against [p]laintiff," or, in the alternative, that the doctrine of qualified immunity bars plaintiff's claim.

[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard . . . .

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " against the countervailing governmental interests at stake.

*Graham*, 490 U.S. at 395-96, 104 L. Ed. 2d at 454-55 (citation omitted) (footnote omitted). Proper application of this "reasonableness" test

requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396, 104 L. Ed. 2d at 455. Finally, the issue to be determined

is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force . . . .

*Id.* at 397, 104 L. Ed. 2d at 456 (citations omitted).

In the instant case, plaintiff alleges Acker touched her on the arm, but testified in her deposition that such touching did not hurt, did not leave any marks, and lasted just "[l]ong enough to unbuckle the seat belt," and that Acker removed his hand when plaintiff asked him to do so. However, plaintiff alleges in her complaint that "Acker's behavior has led [her] to have nightmares and other anxiety."

Plaintiff asserts that she "pose[d] no threat to anyone and [wa]s not trying to flee," such that Acker should have been "prohibited from using any force, because no force [wa]s reasonable under the totality of the circumstances." According to plaintiff, "[w]hen no use of force by an officer is required, no use of force is permissible." Acker counters that any use of force was so minimal as to "not amount to a constitutional violation."

In the course of a lawful arrest, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000); *see also Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (holding that arrestee's claims "that her handcuffs were too tight and that an officer pushed her legs as she got into the police car" are "so insubstantial that [they] cannot as a matter of law support her claim" for use of excessive force). However, if an officer attempts an arrest "without probable cause[,] . . . *any* use of force [i]s inappropriate." *Nolin*, 207 F.3d at 1258 (emphasis added); *see also Graham*, 490 U.S. at 396, 104 L. Ed. 2d at 455 ("Our Fourth Amendment jurisprudence has long recognized that *the right to make an arrest* or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."); *State v. Simmons*, 192 N.C. 692, 695, 135 S.E. 866, 867 (1926) ("[A]n officer who in attempting to make an unlawful arrest . . . commits an assault . . . must be held responsible."); *cf. Terry v. Ohio*, 392 U.S. 1, 27, 20 L. Ed. 2d 889, 909 (1968) (Officer may conduct "reasonable search for weapons . . . where he has reason to believe that he is dealing with an armed and dangerous individual" but has no probable cause to arrest.).

Thus, the issue central to plaintiff's false arrest claim also is determinative of her excessive force claim: if no probable cause existed to arrest plaintiff, any use of force by Acker was unlawful, *see Nolin*, 207 F.3d at 1257; however, if probable cause did exist, Acker was authorized to use a "reasonable" amount of force to effect plaintiff's arrest, *see Graham*, 490 U.S. at 396, 104 L. Ed. 2d at 455. As there are genuine issues of material fact that must be resolved by the trier of fact regarding the existence or non-existence of probable cause, summary judgment was inappropriate on plaintiff's excessive force claim as well.

Acker contends he is entitled to qualified immunity as to this claim. Although the United States Supreme Court "has declined to reach the issue of whether qualified immunity is available as a

defense to excessive force claims," *Baker v. Chaplin*, 517 N.W.2d 911, 914 n.5 (Minn. 1994), this Court has analyzed section 1983 cases as if qualified immunity were available to defendants, *see Roberts*, 126 N.C. App. at 727, 487 S.E.2d at 770. We thus address Acker's argument.

Viewing the facts in the light most favorable to plaintiff, *see Davis*, 116 N.C. App. at 671-72, 449 S.E.2d at 245, Acker did not have probable cause to arrest plaintiff. If Acker was without probable cause to arrest plaintiff, he was not entitled to use any force against her. *See Nolin*, 207 F.3d at 1257-58. Thus, "plaintiff had a clearly established right, under the facts and circumstances shown, not to be subjected to use of excessive force." *Roberts*, 126 N.C. App. at 727, 487 S.E.2d at 770.

We must next "determine whether a reasonable person in the officer's position would have known that his actions violated" plaintiff's right to be free from use of excessive force. *Davis*, 116 N.C. App. at 670, 449 S.E.2d at 244. This determination turns on whether the incident actually occurred in the manner described by plaintiff and must be decided by the trier of fact as material issues of fact are in dispute. *See id.* at 672-73, 449 S.E.2d at 246. Summary judgment was thus inappropriate. *See id.* at 673, 449 S.E.2d at 246.

### C. *State tort claims*

[5] We next address plaintiff's state tort claims, which were brought against Acker in his individual capacity. Plaintiff has not brought suit against the City for these claims. The evidence before the trial court on Acker's motion for summary judgment established a *prima facie* claim of both assault and battery and false imprisonment. As previously discussed, plaintiff presented evidence Acker arrested her without probable cause, thus committing a false arrest. "A false arrest is an arrest without legal authority and is one means of committing a false imprisonment." *Marlowe v. Piner*, 119 N.C. App. 125, 129, 458 S.E.2d 220, 223 (1995). As "the existence or nonexistence of probable cause is for the jury to determine[,] . . . [Acker] was not entitled to summary judgment." *Id.*

"An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow." *Dickens v. Puryear*, 302 N.C. 437, 444, 276 S.E.2d 325, 330 (1981). "A battery is made out when the . . . plaintiff is offensively touched against h[er] will." *Ormond v. Crampton*, 16

N.C. App. 88, 94, 191 S.E.2d 405, 410 (1972). Acker admitted in his answer that he "touched" plaintiff's arm, and plaintiff has presented evidence such contact was against her will.

However,

[p]ursuant to the common law of North Carolina, an assault [and battery] by a law enforcement officer upon a citizen can provide the basis for a civil action for damages against the officer only if a plaintiff can show that the officer used force against plaintiff which was excessive under the given circumstances.

*Fowler v. Valencourt*, 108 N.C. App. 106, 114, 423 S.E.2d 785, 790 (1992), *rev'd in part on other grounds*, 334 N.C. 345, 435 S.E.2d 530 (1993). G.S. § 15A-401(d) governs the use of force by law enforcement officers and provides in pertinent part:

a law-enforcement officer is justified in using force upon another person when and to the extent that he reasonably believes it necessary:

a. To prevent the escape from custody or to effect an arrest of a person *who he reasonably believes has committed a criminal offense*, unless he knows that the arrest is unauthorized . . . .

(Emphasis added.) The statute in effect proscribes the use of force by a law-enforcement officer if the officer either "knows that the arrest is unauthorized" or does not have a reasonable belief that the suspect "has committed a criminal offense." *Id.*; *see also Simmons*, 192 N.C. at 695, 135 S.E. at 867 ("[A]n officer who in attempting to make an unlawful arrest . . . commits an assault . . . must be held responsible."); Farb, *Arrest, Search and Investigation* at 45 ("If officers are making an unlawful arrest, their use of force . . . is also unlawful and may constitute an assault.").

Again, given that the trier of fact must determine the reasonableness of Acker's belief that plaintiff had committed a criminal offense, we hold that the trier of fact should decide whether Acker was entitled to use any force at all against plaintiff. If Acker did not have probable cause to arrest plaintiff, Acker loses the benefit of G.S. § 15A-401(d), and any use of force becomes at least a technical assault and battery against plaintiff.

[6] In sum, the trial court improperly granted Acker's motion for summary judgment on the grounds that Acker "did not commit the

**GLENN-ROBINSON v. ACKER**

[140 N.C. App. 606 (2000)]

common law torts of false imprisonment, assault and/or battery." However, Acker asserts he is protected by the doctrine of official immunity and that summary judgment was appropriate on that ground.

> To maintain a suit against a public official in his/her individual capacity, the plaintiff must make a *prima facie* showing that the official's actions (under color of authority) are sufficient to pierce the cloak of official immunity. Actions that are malicious, corrupt or outside of the scope of official duties will pierce the cloak of official immunity, thus holding the official liable for his acts like any private individual.

*Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996) (citation omitted).

In her complaint, plaintiff alleged Acker committed the tort of assault and battery by "deliberately, willfully, maliciously and in bad faith grabb[ing] plaintiff without her consent," and committed the tort of false imprisonment by "deliberately, willfully, maliciously and in bad faith" restraining plaintiff against her will. Based on our previous discussion of the facts, plaintiff has forecast sufficient evidence that Acker acted maliciously, thus requiring reversal of the trial court's grant of summary judgment in Acker's favor on these claims. *See Roberts*, 126 N.C. App. at 718, 487 S.E.2d at 764.

Plaintiff also has forecast evidence from which it could be found that Acker acted outside the scope of his official duties. All parties agree Acker was off-duty and working a second job as a truck driver at the time of the incident. Further, plaintiff presented evidence that the "Rules & Regulations of the Durham Police Department" provide in section 2.25 that "[o]ff-duty officers in their personal vehicles shall not stop or attempt to stop motorists for traffic violations or other minor offenses." Acker was off-duty and driving a tractor-trailer at the time of the incident at issue, and his order to move the bus appears to have been given so that he could more easily move his tractor-trailer, not to further a purpose of the police department. Thus, plaintiff presented evidence from which it could be found that Acker was acting outside the scope of his duties with the police department at the time of the incident.[4]

---

4. We feel compelled to note that if Acker was acting outside the scope of his authority, *i.e.*, acting not as a police officer but as a private citizen, he also *may not* have been acting "under color of law," as required to sustain a section 1983 claim. *See Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975) ("Acts of police officers in the ambit of their personal, private pursuits fall outside of" section 1983.); *see also Revene v.*

Finally, plaintiff states in her brief that "Acker's conduct may also support a claim for intentional infliction of emotional distress." However, plaintiff did not allege in either her original or amended complaint that Acker had committed such tort; she may therefore not pursue this claim.

### D. *Award of Costs*

Finally, plaintiff assigns error to that portion of the trial court's 19 April 1999 order taxing costs to plaintiff. Given our disposition herein reinstating plaintiff's claims against Acker, the trial court's award of costs was premature and is therefore vacated.

### II. *Plaintiff's claims against the City*

We now turn to plaintiff's claims against the City. In her complaint, plaintiff alleged the City "by way of its pattern, practice, custom or usage condoned or was deliberately indifferent to officers' violations of the Fourth Amendment and Fourteenth Amendment" and that the City "violated the rights guaranteed to the plaintiff under the N.C. Constitution, Art. I, [§§] 14, 19, 20, 21, 35 and 36." The trial court granted summary judgment in favor of the City on both claims. While the City's motion for summary judgment was based on the defense of *res judicata*, a defense rendered inapposite in light of our disposition with regard to plaintiff's claims against Acker, we note that "[i]f the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal." *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989).

### A. *Section 1983 claims*

[7] Preliminarily, we note "a municipal entity has no claim to immunity in a section 1983 suit." *Moore v. City of Creedmoor*, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997). Further, while a "municipality cannot be held liable under section 1983 unless action pursuant to official municipal policy [or custom] caused a constitutional tort," *Burton*, 118 N.C. App. at 685, 457 S.E.2d at 334, summary judgment was not proper for the City on the basis that no constitutional violation occurred as we have reinstated plaintiff's claims against Acker. Thus,

---

*Charles County Com'rs*, 882 F.2d 870, 872 (4th Cir. 1989) ("[T]he lack of the outward indicia suggestive of state authority—such as being on duty, wearing a uniform, or driving a patrol car—are not alone determinative of whether a police officer is acting under color of state law[; r]ather, the nature of the act performed is controlling."). As this issue was not raised by the parties, however, we decline to address it further.

[a]ssuming *arguendo* [plaintiff] suffered a deprivation of her federal rights, it is by now well settled that a municipality is only liable under section 1983 if it causes such a deprivation through an official policy or custom. Municipal policy may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens. Outside of such formal decisionmaking channels, a municipal custom may arise if a practice is so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law."

*Carter,* 164 F.3d at 218 (citations omitted). The municipality must have had, at the time of the incident, actual or constructive knowledge that the practice had become customary. *See Spell v. McDaniel,* 824 F.2d 1380, 1391 (4th Cir. 1987).

Where a plaintiff claims the municipality has caused an employee to inflict an injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Board of Comm'rs of Bryan City v. Brown,* 520 U.S. 397, 405, 137 L. Ed. 2d 626, 640 (1997); *see also Spell,* 824 F.2d at 1388 (plaintiff must prove an "affirmative link" between the custom and the violation). Further, "a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation." *Carter,* 164 F.3d at 218; *see also Canton v. Harris,* 489 U.S. 378, 391, 103 L. Ed. 2d 412, 428 (1989) ("[T]he identified deficiency . . . must be closely related to the ultimate injury.").

Plaintiff alleges,

there is a well-known, well-tolerated pattern, practice, custom or usage of [the City] . . . to foster and allow an atmosphere of repression and lawlessness by not punishing police officers who assault, batter, or violate the Fourth Amendment rights of Durham residents, or use unlawful process against citizens, including but not limited to falsely charging citizens with a crime after an officer uses excessive force or is angered by a citizen's exercise of their rights.

In her complaint, plaintiff cited ten incidents that were "example[s] of the . . . custom." However, two of these incidents involved illegal

searches, not false arrests or uses of excessive force, and as such are insufficiently related to plaintiff's claims to be relevant. *See Carter*, 164 F.3d at 219 (refusing to consider past incidents of alleged excessive force when plaintiff's claims were for false arrest and unreasonable search and seizure). A third example alleges only that a "woman" was charged with resisting an officer "after the officer became angered" by the woman. While plaintiff states the charges against the woman were dismissed, plaintiff does not allege that the woman's right to be free from false arrest was violated. Thus, this incident is also irrelevant. *See id.*

Plaintiff's remaining examples are as follows: (1) in 1994, an officer fractured Kimberly Porter's finger, then falsely charged her with trespass "after the officer became angered by" her; the officer was not punished; (2) in a 1994 incident between Margaret Dukes (Dukes), Reta Scarlett (Scarlett), and an officer, the City admitted Dukes' Fourth Amendment rights had been violated by an unlawful arrest, "paid a very large monetary settlement" to Dukes, but stated in a press release it "was not admitting wrongdoing by anyone" and did not discipline anyone involved in the incident; (3) in 1993, a woman was falsely charged with resisting an officer after the officer became angered by the woman; (4) in 1993, excessive force was used against Glennis E. Jones II after an unlawful traffic stop by an officer; the officer was not disciplined; (5) in the mid-1980's, excessive force was used against a "suspect" who "pos[ed] no threat"; the officer "is now in the training division" of the police department; (6) in 1978, a man was falsely charged with various traffic and criminal offenses and was beaten by the arresting officer; this officer has been promoted; and (7) City records "indicate that there have been at least twenty (20) instances in which the Police Department has sustained complaints for assault and/or violations of" department regulations regarding the use of force, but no officers have been terminated or referred for criminal prosecution.

The City in its answer admitted that the confrontations noted in examples one through six occurred, but denied that any of the arrests were unlawful or that excessive force was used and specifically denied the existence of a "pattern, practice, custom or usage" of assault and use of excessive force by its officers.

Plaintiff submitted no further evidence to the trial court regarding examples one, three, four, five, and six. Further, although plaintiff's complaint was verified, plaintiff testified in a later deposition she had no personal knowledge "other than what [she] may have been

told by [her] attorneys" of the incidents. Even if we were to consider plaintiff's complaint to be an affidavit, it is the long-standing rule of this Court that affidavits must be "made on the affiant's personal knowledge." *Singleton v. Stewart*, 280 N.C. 460, 467, 186 S.E.2d 400, 405 (1972). Thus, any portion of plaintiff's affidavit not based on personal knowledge "could not have been properly considered by the trial judge" on summary judgment. *Id.*

In the instant case, plaintiff "may not rest upon the mere allegations . . . of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." G.S. § 1A-1, Rule 56(e). As plaintiff has provided no evidence beyond "mere allegations," *id.*, indicating the circumstances surrounding the incidents, we are unable even to infer that a false arrest or use of excessive force occurred therein. We thus decline to consider these incidents in our review of the propriety of the trial court's summary judgment order. *See Briley v. Farabow*, 348 N.C. 537, 544, 501 S.E.2d 649, 654 (1998) (holding that "unsupported, conclusory allegations are simply insufficient to create the existence of a genuine issue of material fact where the moving party has offered a proper evidentiary showing").

We now turn to plaintiff's remaining examples. As to example seven, plaintiff submitted a document entitled "Sustained IA Cases With Disciplinary Action Taken." This document indicates that several complaints of assault and excessive force have been made against Durham police officers; however, the document also indicates that in each case, the officer involved was either given a written or verbal reprimand, suspended, or ordered to undergo counseling. Therefore, this evidence "does not support a conclusion that the City is deliberately indifferent to or condones improper behavior on the part of its officers. In fact, it shows just the opposite." *Carter*, 164 F.3d at 220 (holding that municipality did not condone conduct where officer accused of false arrest was suspended by department).

As to example two regarding Dukes and Scarlett, plaintiff submitted the City's answers to interrogatories, in which the City admitted (1) the stop and search of Dukes and Scarlett was unauthorized, (2) the force used therein was unauthorized and therefore excessive, and (3) no officer was disciplined for that incident. Plaintiff also submitted a 26 August 1997 letter from City Manager P. Lamont Ewell (Ewell) apologizing to Dukes for the unauthorized stop and search and use of excessive force.

Finally, plaintiff submitted an 18 July 1995 letter from former police chief Jackie W. McNeil (McNeil), not specifically related to any of plaintiff's ten examples, in which McNeil admitted he knew of citizen complaints that officers had "physical[ly] abus[ed] citizens." The letter provided no details of any of the incidents nor did it indicate how many incidents had occurred.

> Municipal fault for allowing . . . a developed "custom or usage" to continue requires (1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices.

*Spell*, 824 F.2d at 1391. Assuming *arguendo* the letters from McNeil and Ewell indicate active or constructive knowledge of a custom of false arrests or use of excessive force by Durham police officers, plaintiff presented insufficient evidence that the City failed to correct or stop the practices due to its deliberate indifference to citizens' rights. *See id.*

Plaintiff has provided competent evidence of only one incident (the Dukes/Scarlett incident), other than the one between herself and Acker, in which no officers were disciplined for a false arrest or use of excessive force against a citizen. This single episode is insufficient to constitute "the 'widespread and permanent' practice necessary to establish municipal custom." *Carter*, 164 F.3d at 220 (quoting *Greensboro Prof. Fire Fighters Ass'n v. Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995)). The trial court therefore properly granted the City's motion for summary judgment as to plaintiff's section 1983 claims.

## B. *State constitutional claims*

[8] We also affirm the trial court's grant of summary judgment as to plaintiff's North Carolina constitutional claims. First, plaintiff alleges in her brief that she has "raised a free speech claim against" the City. However, nothing in the record indicates that plaintiff's right to free speech was violated in any way, and plaintiff does not allege, either in her complaint or in her brief to this Court, that any action by Acker or the City has restricted her speech or deterred her from speaking on any subject. The court was correct to dismiss this claim.

As to plaintiff's remaining state constitutional claims, we are guided by the principle that "a direct cause of action under the State Constitution is permitted only 'in the absence of an adequate state

remedy.' " *Davis*, 116 N.C. App. at 675, 449 S.E.2d at 247 (quoting *Corum*, 330 N.C. at 782, 413 S.E.2d at 289). The judiciary "must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power." *Corum*, 330 N.C. at 784, 413 S.E.2d at 291.

As we have reversed the trial court's grant of summary judgment on plaintiff's state tort law claims against Acker, there is an adequate state remedy for plaintiff's alleged injury resulting from Acker's conduct. *See Davis*, 116 N.C. App. at 675, 449 S.E.2d at 248 (holding that common law false imprisonment claim adequately protects "constitutional right not to be unlawfully imprisoned" and deprived of liberty). Plaintiff concedes as much in her brief, noting that only if this Court should find plaintiff "has no common law cause of action against . . . Acker in his individual *capacity*" should her claims arising under Article I, §§ 19-21, 35, and 36, stand. The trial court thus properly entered summary judgment in favor of the City on each of plaintiff's state constitutional claims.

## C. *Award of costs*

**[9]** Plaintiff also assigns error to the trial court's award of costs to the City. The court's order granting summary judgment simply states "[t]he costs of this action shall be taxed against [p]laintiff." Plaintiff does not argue it was error to tax costs to her, but rather argues it was error for the trial court not to include language in the order "making it clear that costs did not include attorney's fees."

The award of attorney's fees in a section 1983 action is governed by 42 U.S.C. § 1988 (1994), which states "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee *as part of the costs*." (emphasis added). Plaintiff apparently is concerned attorney's fees will be assessed herein as part of the costs awarded by the court.

Plaintiff correctly notes that attorney's fees may be awarded under section 1988 to a prevailing defendant only "upon a *finding* that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 54 L. Ed. 2d 648, 657 (1978) (emphasis added). As the trial court made no such finding, no attorney's fees may be awarded to the City on the basis of this order. *See Hughes v. Rowe*, 449 U.S. 5, 15, 66 L. Ed. 2d 163, 173 (1980).

In addition, the record shows no indication that the City has moved for an award of attorney's fees. In fact, in its brief, the City states it "has no objection to modifying the order and judgment to make plain that as used therein the word 'costs' does not include attorneys' fees," so long as such alteration does not foreclose its ability to later seek an award of attorney's fees. Thus, we hold that the order at issue awards only costs, not attorney's fees, to the City.

### III. *Plaintiff's motion for partial summary judgment*

**[10]** Finally, plaintiff assigns error to the trial court's denial of her motion for partial summary judgment and/or request for the trial court to take judicial notice. Plaintiff moved for partial summary judgment on the issue of whether plaintiff was seized by Acker. However, as we have discussed previously, summary judgment was not appropriate on this issue as there are genuine issues of material fact to be resolved, *i.e.*, whether a reasonable person could believe she was not free to leave the school bus during the incident between Acker and plaintiff. *See Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509.

Plaintiff asked the trial court to take judicial notice of the following:

2. That on or about May 7, 1996, Durham Police officers had no authority under state law to arrest a person for a motor vehicle infraction.

3. That . . . Acker, an off-duty Durham Police Corporal, had no authority to arrest [p]laintiff . . . for a motor vehicle infraction.

4. Since approximately 1986, law enforcement officers in North Carolina have had no authority to arrest a person for a motor vehicle infraction.

5. Durham Police Department rules and regulations in effect during 1996 state:

2.25 Traffic Stops in Personal Vehicles

Off-duty officers in their personal vehicles shall not stop or attempt to stop motorists for traffic violations or other minor offenses.

Judicial notice of adjudicative facts is governed by N.C.G.S. § 8C-1, Rule 201 (1999). Adjudicative facts are "the facts of the particular case," including "who did what, where, when, how, and with

what motive or intent," and must be distinguished from legislative facts, defined as "those which have relevance to legal reasoning." *Id.*, commentary.

"Facts" two through four are not adjudicative facts, but are more akin to legislative facts. While our courts do take judicial notice of state laws, *see, e.g., Wikel v. Commissioners*, 120 N.C. 451, 452, 27 S.E. 117, 117 (1897) ("court takes judicial notice . . . of . . . a public act"), plaintiff did not ask the court to take judicial notice of any specific general statute. *Cf.* G.S. § 8C-1, Rule 201(d) (Court "shall take judicial notice" of adjudicative fact only if supplied with "necessary information."). Rather, "facts" two through four are best character-ized as legal conclusions, which are not a proper subject for judicial notice.

"Fact" five simply recites a purported regulation of the Durham Police Department. However, our courts may not take judicial notice of municipal ordinances, see *Fulghum v. Selma*, 238 N.C. 100, 105, 76 S.E.2d 368, 371 (1953), much less police department regulations. The court thus properly denied plaintiff's motion.

To summarize, the court's order granting summary judgment in favor of Acker is reversed, and the court's orders denying plaintiff's motion for partial summary judgment and granting summary judg-ment in favor of the City are affirmed. We vacate the award of costs to Acker as premature and hold that the award of costs to the City does not include an award of attorney's fees.

Affirmed in part, reversed in part, and vacated in part.

Judges WYNN and MARTIN concur.