J. E. EDWARDS, BANISTER HENSLEY, HIRAM HENSLEY, YATES BAILEY, FRIEL M. YOUNG, RALPH RAY, ALLISON EDWARDS, REX McINTOSH, L. Q. MILLER, DEWEY HENSLEY, CATHERINE PROFFITT, JAMES PROFFITT, CHARLEY BRADFORD, T. A. BUCHANAN AND JESS BUCKNER v. THE BOARD OF EDUCATION OF YANCEY COUNTY AND FRANK W. HOWELL, SUPERINTENDENT OF SCHOOLS AND EX OFFICIO CLERK TO THE BOARD OF EDUCATION.

(Filed 9 April, 1952.)

1. **Schools § 4b—**

A county board of education is a corporate body which has legal existence separate and apart from its members even though it may not act except at a meeting attended by a quorum of its *de jure* or *de facto* members and therefore may not act when vacancies reduce its membership below the number required to constitute a quorum.

2. **Same: Municipal Corporations § 10—**

In the absence of statutory provision to the contrary, the common law rule applies that the quorum of a municipal board is a majority of its whole membership.

3. **Schools § 4b—**

Vacancies upon the board of education of a county may be filled by county executive committees of political parties or the State Board of Education. G.S. 115-42.

4. **Schools § 3a—**

A county board of education may not be restrained from exercising its power to consolidate the existing high schools into one county-wide high school with the approval of the State Board of Education, G.S. 115-99, or its power to contract for the erection of the consolidated high school building out of funds available to it for this purpose, G.S. 115-84, and where such funds have been made available by allocation of State funds with the approval of the State Board of Education, the fact that the board of county commissioners had refused to allocate funds for this purpose is immaterial.

5. **Schools § 4b: Public Officers § 4b—**

A member of a county board of education vacates this office *eo instanti* he accepts the office of mayor of a municipality, since both are public offices under the State within the purview of Art. XIV, sec. 7, of the Constitution of North Carolina, and thereafter he is neither a *de jure* nor a *de facto* member of the board of education.

6. **Public Officers § 4b—**

A postmaster holds office under the United States and therefore his election or appointment as a member of a county board of education is ineffective, Art. XIV, sec. 7, of the Constitution of North Carolina, and he is neither a *de jure* nor a *de facto* member of the county board of education.

7. **Schools § 4b—**

A county board of education, sued in its corporate capacity with the sole joinder of the county superintendent of public schools as clerk to the board may not be restrained from doing a lawful act on the ground that

two of its members were mere usurpers and that therefore it was totally incapacitated to perform any official act, the remedy being by suit against the usurpers to restrain them from doing an unlawful act, or by direct proceedings in the nature of *quo warranto* to oust the usurpers, G.S. 1-515 to G.S. 1-530.

APPEAL by defendants from *Pless, J.,* at Chambers in Marion, North Carolina, 29 December, 1951, in action pending in the Superior Court of YANCEY.

Suit by taxpayers of county to restrain county board of education from making a contract for the construction of a school building to house a consolidated high school.

These are the facts:

1. There are five existing high schools for children of the white race in the Yancey County Administrative Unit. They are the Bald Creek High School, the Bee Log High School, the Burnsville High School, the Clearmont High School, and the Micaville High School.

2. Prior to 8 November, 1949, a State Review Panel studied the public school system of Yancey County, and recommended that these five high schools be consolidated into one high school to be operated at Burnsville just as soon as ample facilities for housing the consolidated high school were available at that place.

3. On 8 November, 1949, the Board of Education of Yancey County, which then consisted of three *de jure* members, namely, Fred Ayers, P. M. Hensley, and Jobe Thomas, adjudged that the educational interests of Yancey County would be better served by the consolidation of schools proposed by the State Review Panel, and took corporate action consolidating the high schools mentioned in Paragraph 1 into one county-wide high school for children of the white race, and authorizing the construction of a new school building at Burnsville to house the consolidated high school whenever funds were available for that purpose.

4. On 1 December, 1949, the State Board of Education approved the consolidation made by the Board of Education of Yancey County as set out in the preceding paragraph.

5. Subsequent to these events, the Board of Education of Yancey County requested the Board of Commissioners of Yancey County to provide funds for the construction of a new school building at Burnsville to house the consolidated high school, and the Board of Commissioners refused to furnish such funds for the avowed reason that the consolidation of the five high schools "would not be for the best educational interests of the high school students of Yancey County."

6. Thereafter the State Superintendent of Public Instruction approved plans for a new school building at Burnsville to house the consolidated high school, and the State Board of Education consented for the Board

of Education of Yancey County to use $157,755.74 out of the moneys allocated to Yancey County from the State "School Plant Construction, Improvement, and Repair Fund" for constructing such new school building in accordance with such plans.

7. Pursuant to Chapter 256 of the 1951 Session Laws of North Carolina, Jobe Thomas, Mark W. Bennett, and Clyde Ayers qualified as members of the Board of Education of Yancey County "for a period of two years beginning with the first Monday in April, 1951." On 5 July, 1951, Mark W. Bennett accepted the office of Mayor of the Town of Burnsville, and ever since has undertaken to discharge the duties of the mayoralty as well as those of a member of the Board of Education of Yancey County. On 31 August, 1951, Clyde Ayers resigned as a member of the Board of Education of Yancey County, and was succeeded by R. A. Radford, who was elected a member in his stead by the Democratic Executive Committee of Yancey County in conformity to the provisions of G.S. 115-42. Radford was serving as United States postmaster at Cane River, North Carolina, when he accepted membership upon the Board of Education of Yancey County, and ever since that time he has undertaken to discharge the duties of the postmastership as well as those of a member of the Board of Education of Yancey County.

8. On 1 October, 1951, Jobe Thomas, Mark W. Bennett, and R. A. Radford, professing to act as the Board of Education of Yancey County, declared their purpose to proceed with the immediate construction of the new consolidated high school building at Burnsville in accordance with the plans approved by the State Superintendent of Public Instruction and at a cost not exceeding the $157,755.74 mentioned in paragraph 6. In obedience to this declaration, Frank W. Howell, the Superintendent of Public Instruction of Yancey County, made public advertisement inviting contractors to submit bids "until 2:00 P.M. December 14, 1951, . . . for the construction of a new consolidated high school building at Burnsville" conforming to the approved plans.

9. On 13 December, 1951, the plaintiffs, who are taxpaying citizens and residents of Yancey County, brought this action against the defendants, the Board of Education of Yancey County and Frank W. Howell, the Superintendent of Public Instruction of Yancey County. The complaint is summarized in the opinion. The plaintiffs procured a temporary order on their *ex parte* application restraining the defendants from making any contract for the construction of the proposed consolidated high school building at Burnsville pending further orders of the court. On the return day, *i.e.*, 29 December, 1951, Judge Pless heard the evidence of the parties, made findings of fact accordant with those stated above, and entered an order continuing the temporary restraining order in force until the final hearing. The defendants excepted and appealed, assigning the continuance of the restraining order as error.

*Bill Atkins and R. W. Wilson for plaintiffs, appellees.*
*C. P. Randolph and W. E. Anglin for defendants, appellants.*

ERVIN, J.   The legal questions arising on this appeal have been unduly complicated and obscured by the manner in which the action has been brought and developed.   The issues involved appear in simpler guise if the judicial gaze is focused on certain significant matters at the outset.

The plaintiffs seek the aid of equity.   They ask an injunction requiring the defendants to refrain from doing a particular thing.   There are only two defendants.   They are the Board of Education of Yancey County, and Frank W. Howell, the Superintendent of Public Instruction of Yancey County.   The Board of Education of Yancey County is a body corporate which acts through three members.   G.S. 115-37; G.S. 115-45; 1951 Session Laws, Ch. 256, Sec. 1.   Howell is not a member of the board, and is not in control of the act sought to be enjoined.   He is simply secretary of the board.   G.S. 115-105.

Since the county board of education is a corporate body, it necessarily has a legal existence separate and apart from its members.   *Crabtree v. Board of Education,* 199 N.C. 645, 155 S.E. 550.   But the board can exercise the powers conferred upon it by law only at a regular or special meeting attended by at least a quorum of its *de jure* or *de facto* members. *Kistler v. Board of Education,* 233 N.C. 400, 64 S.E. 2d 403; *Crabtree v. Board of Education, supra.*   The statute creating the county board of education does not specify in terms the number of members competent to transact its corporate business in the absence of other members.   As a consequence, the common law rule that a majority of the whole membership is necessary to constitute a quorum applies.   *Hill v. Ponder,* 221 N.C. 58, 19 S.E. 2d 5.   The county board of education becomes incapable of performing its corporate functions whenever vacancies reduce its membership below the number required to constitute a quorum.   56 C.J., Schools and School Districts, section 209.   In order to obviate the legal paralysis incident to such an eventuality and to maintain the county board of education at its full membership, the Legislature has expressly authorized county executive committees of political parties and the State Board of Education to fill vacancies occurring in the membership of the board.   G.S. 115-42.

The complaint in the instant case endeavors to state two grounds for injunctive relief.

It asserts initially that the plaintiffs are taxpaying citizens and residents of Yancey County; that they sue on behalf of all taxpayers of Yancey County; that the Board of Education of Yancey County is about to make a contract for the construction of a consolidated high school building at Burnsville; that the Board of Commissioners of Yancey

County has refused to provide funds for the construction of the building, and by reason thereof no public money whatever is available for its erection; and that the proposed contract, if made, will offend G.S. 115-84, which provides, in essence, that a county board of education has no authority to contract for the construction of a new schoolhouse costing more than the "money . . . available for its erection." It prays an injunction restraining the county board of education and the county superintendent of public instruction from making the proposed contract for the construction of the consolidated high school.

Manifestly these allegations are designed by the plaintiffs to state facts entitling them as taxpayers of Yancey County to maintain an action to enjoin the county board of education as a corporate body from entering into an unauthorized and illegal contract for a public improvement. *Sessions v. Columbus County,* 214 N.C. 634, 200 S.E. 418; *Palmer v. Haywood County,* 212 N.C. 284, 193 S.E. 668; 52 Am. Jur., Taxpayers' Actions, section 17; 43 C.J.S., Injunction, section 112.

When the plaintiffs are put to their proof, it appears that their *allegata* and their *probata,* like Maud Muller's verbs and nouns, do not agree.

The evidence and the findings establish these propositions: That the county board of education consolidated the five existing high schools into one county-wide high school with the approval of the State Board of Education in conformity with G.S. 115-99. That the plans for the new school building to house the consolidated high school have been approved by the State Superintendent of Public Instruction. That public moneys are available for the erection of the new consolidated high school building in accordance with those plans. That such moneys were not furnished by the county commissioners or the taxpayers of Yancey County, but, on the contrary, they were allocated to the county board of education from a State fund known as the "School Plant Construction, Improvement and Repair Fund," which was appropriated by chapters 1020, 1249, and 1295 of the 1949 Session Laws of North Carolina for expenditure and disbursement "under the direction and supervision of the State Board of Education for the construction, improvement, and repair of school plant facilities." That the State Board of Education has consented for the county board of education to use the moneys thus allocated to it for the erection of the new consolidated high school building.

These things being true, the county board of education is vested with plenary power by G.S. 115-84 to contract for the erection of the consolidated high school building. Consequently the plaintiffs have failed to prove the first ground invoked by them as a basis for injunctive relief. Equity will not enjoin a county board of education from exercising its governmental functions in a manner authorized by a valid law. *Kistler v. Board of Education, supra; Messer v. Smathers,* 213 N.C. 183, 195

S.E. 376; *Clark v. McQueen,* 195 N.C. 714, 143 S.E. 528; *McInnish v. Board of Education,* 187 N.C. 494, 122 S.E. 182; *Davenport v. Board of Education,* 183 N.C. 570, 112 S.E. 246; *Pemberton v. Board of Education,* 172 N.C. 552, 90 S.E. 578; *Newton v. School Committee,* 158 N.C. 186, 73 S.E. 886; *Pickler v. Board of Education,* 149 N.C. 221, 62 S.E. 902; *Venable v. School Committee,* 149 N.C. 120, 62 S.E. 902; *Smith v. School Trustees,* 141 N.C. 143, 53 S.E. 524, 8 Ann. Cas. 529.

We deem it advisable to note at this juncture that the plaintiffs have not shown any interest entitling them to maintain an action to enjoin the expenditure of State moneys. They neither allege nor prove that they are taxpayers of the State. *Branch v. Board of Education,* 233 N.C. 623, 65 S.E. 2d 124; *Hughes v. Teaster,* 203 N.C. 651, 166 S.E. 745. We ignore this objection, however, in reaching our conclusion on the present phase of the case because it could undoubtedly be removed by additional allegation and evidence.

The complaint alleges these things as a second ground for the injunctive relief sought:

That Jobe Thomas, Mark W. Bennett, and R. A. Radford are undertaking to exercise the functions of members of the county board of education, and to bind the board by the proposed contract, whose execution the plaintiffs seek to enjoin. That on the first Monday in April, 1951, Bennett duly qualified as a member of the county board of education for a term of two years; that on 5 July, 1951, he accepted the post of mayor of the Town of Burnsville without relinquishing his membership on the county board of education; and that ever since he has been discharging the duties of the mayoralty as well as those of a member of the county board of education. That on or about 31 August, 1951, Radford, who was then United States Postmaster at Cane River, North Carolina, was appointed a member of the county board of education for an unexpired term lasting until the next regular session of the General Assembly; that he forthwith undertook to qualify as a member of the county board of education for such unexpired term without surrendering the postmastership; and that ever since he has been discharging the duties of a member of the county board of education as well as those of postmaster.

The evidence and the findings establish the truth of these allegations.

The plaintiffs and the defendants take different legal positions on this aspect of the case. The plaintiffs assert that Bennett and Radford are mere usurpers in law, and by reason thereof are not members of the county board of education at all or for any purpose. *S. v. Shuford,* 128 N.C. 588, 38 S.E. 808; *Van Amringe v. Taylor,* 108 N.C. 196, 12 S.E. 1005, 23 Am. S. R. 51, 12 L.R.A. 202; *Norfleet v. Staton,* 73 N.C. 546. The defendants insist that they are at least *de facto* members of the county board of education, and in consequence cannot be prevented by

injunction from exercising the functions of such offices pending direct proceedings in the nature of *quo warranto* to determine their titles thereto. *In re Wingler,* 231 N.C. 560, 58 S.E. 2d 372; *Crabtree v. Board of Education, supra; Rogers v. Powell,* 174 N.C. 388, 93 S.E. 917; *Patterson v. Hubbs,* 65 N.C. 119.

A member of the county board of education holds a public office under the State. *Greene v. Owen,* 125 N.C. 212, 34 S.E. 424; *Barnhill v. Thompson,* 122 N.C. 493, 29 S.E. 720. The like observation applies to the mayor of a municipality, for he is the official head of a political subdivision of the State and performs duties under State laws. *S. v. Thomas,* 141 N.C. 791, 53 S.E. 522. A postmaster holds an office under the United States. *McGregor v. Balch,* 14 Vt. 428, 39 Am. Dec. 231. It appears, therefore, that recourse must be had to the rules of law governing double office holding for the determination of the relationships which Bennett and Radford sustain to the county board of education.

The holding of more than one office is expressly prohibited by Article XIV, section 7, of the North Carolina Constitution, which makes this declaration: "No person who shall hold any office or place of trust or profit under the United States, or any department thereof, or under this State, or under any other state or government, shall hold or exercise any other office or place of trust or profit under the authority of this State, or be eligible to a seat in either house of the General Assembly: Provided, that nothing herein contained shall extend to officers in the militia, justices of the peace, commissioners of public charities, or commissioners for special purposes."

This constitutional inhibition against double office holding is enforced in alternative ways, depending on whether the first office is a state or a federal office.

1. Where one holding a first office under the State violates Article XIV, section 7, of the North Carolina Constitution by accepting a second office under either the State or the United States without surrendering the first office, he automatically and instantly vacates the first office, and he does not thereafter act as either a *de jure* or a *de facto* officer in performing functions of the first office because he has neither right nor color of right to it. *S. v. Long,* 186 N.C. 516, 120 S.E. 87; *Whitehead v. Pittman,* 165 N.C. 89, 80 S.E. 976. See, also, in this connection: *In re Advisory Opinion in re Phillips,* 226 N.C. 777, 39 S.E. 2d 217; *Hill v. Ponder, supra; In re Barnes,* 212 N.C. 735, 194 S.E. 499; *Harris v. Watson,* 201 N.C. 661, 161 S.E. 215, 79 A.L.R. 441; *S. v. Wood,* 175 N.C. 809, 95 S.E. 1050; *Midgett v. Gray,* 158 N.C. 135, 159 N.C. 445, 74 S.E. 1050; *Barnhill v. Thompson, supra.*

2. Where one holding a first office under the United States violates Article XIV, section 7, of the North Carolina Constitution by accepting

a second office under the State without surrendering the first office, his. attempt to qualify for the second office is absolutely void, and he does not act as either a *de jure* or a *de facto* officer in performing functions of the second office because he has neither right nor color of right to it. *State ex rel. Wimberly v. Barham,* 173 La. 488, 137 So. 862, affirming *State ex rel. White v. Mason,* 17 La. App. 504, 133 So. 809, *State ex rel. Wimberly v. Barham,* 17 La. App. 527, 133 So. 812, and *State ex rel. Gray v. Pipes,* 17 La. App. 502, 133 So. 812.

The necessity for the alternative ways of enforcing the constitutional prohibition of dual office holding is revealed by these remarks of the Supreme Court of Indiana: "It is doubtless the general rule that where a man accepts an office under the state, he vacates another held under the same sovereignty . . . There is reason for the rule where the offices emanate from the same government, but none where the offices are created by different governments . . . Where, as here, a man elected to a state office persists in retaining a federal office, actually remains in it, enjoying its emoluments, and discharging its duties, he does not, in legal contemplation, and certainly not in fact, vacate it by entering into an office existing under the law of the State, and for this plain reason: The laws of the State do not operate upon federal offices. Our laws do not extend to offices created by the general government, and no act that an officer acting under our laws can do can vacate an office upon which our laws do not operate." *Foltz v. Kerlin,* 105 Ind. 221, 4 N.E. 439. See, also, 67 C.J.S., Officers, section 23.

Our conclusions do not conflict with the decision in *Wingler's case, supra.* But the general observation in the opinion in that case that one may be "a judge *de facto* . . . although he holds incompatible offices" is too broad, and is modified so as to conform to the views here expressed. The case at bar is distinguishable from *Berry v. Payne,* 219 N.C. 171, 13 S.E. 2d 217, where the plaintiffs were estopped by their conduct from asserting that the occupants of the municipal offices were mere usurpers.

We are aware that our conclusions on the present phase of the controversy are not in harmony with those reached by some courts in other jurisdictions in somewhat similar cases. 100 A.L.R. 1187-1189. We cannot abandon them, however, without disavowing *S. v. Long, supra,* and *Whitehead v. Pittman, supra.* Besides, they are calculated to prevent the nullification of the constitutional ban on double office holding.

What has been said impels the adjudication that Bennett and Radford are neither *de jure* nor *de facto* members of the county board of education. They are mere usurpers, and their acts are utterly void, both as to the public and as to individuals. *In re Wingler, supra.*

Notwithstanding this, the judge erred in continuing the restraining order to the final hearing. Undoubtedly an injunction will lie in a prop-

erly constituted case to prevent a waste of public funds by usurpers. But this is not such a case. The plaintiffs have the wrong sow by the ear. They do not sue the usurpers to enjoin them from doing an illegal act. They sue the county board of education to restrain it from doing a lawful act. As ground for the relief prayed by them, they show that vacancies exist in two of the three posts on the board, and that as a result the board is totally incapacitated to do the act which they seek to prevent it from doing.

The law affords a sure and speedy cure for the legal paralysis inflicted upon a county board of education by vacancies which reduce its membership below the number required to constitute a quorum. The vacancies can be filled in the summary manner prescribed by G.S. 115-42. Moreover, usurpers can be removed from public offices by judgments of ouster in direct proceedings in the nature of *quo warranto*. G.S. 1-515 to G.S. 1-530; *Barnhill v. Thompson, supra.*

The order continuing the restraining order to the final hearing is
Reversed.