627 S.E.2d 225 (2006)
Michael G. RIPELLINO, Louise A. Ripellino, and Nicole Ripellino, Plaintiffs-Appellants
v.
The NORTH CAROLINA SCHOOL BOARDS ASSOCIATION, INCORPORATED; North Carolina School Boards Trust, A Division and/or Department of, Created and Administered by, The North Carolina School Boards Association, Incorporated; 1982 North Carolina School Boards Association Self-Funded Trust Fund, A Division and/or Department of, Created and Administered by, The North Carolina School Boards Association, Incorporated; 1986 North Carolina School Boards Association Self-Funded Errors and Omissions/General Liability Trust Fund, A Division and/or Department of, Created and Administered by, The North Carolina School Boards Association, Incorporated; 1997 North Carolina School Boards Association Self-Funded Auto/Inland Marine Trust Fund, A Division and/or Department of, Created and Administered by, The North Carolina School Boards Association, Incorporated; and The Johnston County Board of Education, Defendants-Appellees.
No. COA04-1681.
Court of Appeals of North Carolina.
March 7, 2006.
Mast, Schulz, Mast, Mills, Johnson & Wells, P.A., by Bradley N. Schulz and Don R. Wells, Smithfield, for plaintiffs-appellants.
Cranfill, Sumner & Hartzog, L.L.P., by Stephanie Hutchins Autry and Rachel B. Esposito, Raleigh, for defendant-appellee Johnston County Board of Education.
Yates, McLamb & Weyher, L.L.P., by Barbara B. Weyher, Raleigh, for defendants-appellees Trust Defendants.
*227 CALABRIA, Judge.
Michael G. Ripellino, Louise A. Ripellino, and Nicole Ripellino (collectively "plaintiffs") appeal from orders granting summary judgment and judgment on the pleadings to the Johnston County Board of Education ("the Board") and to the North Carolina School Boards Association, Inc.; the North Carolina School Boards Trust; 1982 North Carolina School Boards Association Self-Funded Trust Fund; 1986 North Carolina School Boards Association Self-Funded Errors and Omissions/General Liability Trust Fund; and the 1997 North Carolina School Boards Association Self-Funded Auto/Inland Marine Trust Fund (collectively "Trust Defendants"). We reverse and remand.
A summary of the facts in this case are set out in Ripellino v. North Carolina School Boards Association, Inc., 158 N.C.App. 423, 425, 581 S.E.2d 88, 90 (2003) ("Ripellino I") as follows:
At the end of classes on 9 March 1998, [Nicole Ripellino ("Nicole")] was departing from Clayton High School in Johnston County in her parent[s'] vehicle. A traffic control gate owned by the Johnston County *228 Board of Education ("the Board") swung closed, struck the vehicle, and injured Nicole. In October 1998, the Ripellinos were paid $2,153.18 for property damage. The Board refused to pay medical expenses or other compensation.
On 26 March 2001 ... plaintiffs filed suit against the Board, and [the Trust Defendants]. Plaintiffs alleged (1) a negligent personal injury claim against the Board on the part of Nicole, (2) a medical expenses claim on the part of Nicole's parents against the Board, (3) declaratory judgment that immunity had been waived through (a) participation in the trust and (b) the payment of property damages, (4) unfair and deceptive trade practices against all defendants, (5) 42 U.S.C. § 1983 claim ... and constitutional claims against all defendants, and (6) punitive damages.
Upon motion of the Board, the trial court bifurcated the trial allowing the issues of whether the Board was immune from suit and whether the Board had waived sovereign immunity to be resolved while the other claims were stayed.... [T]he trial court granted summary judgment in favor of all defendants on all claims. Plaintiffs appeal[ed.] ...
In Ripellino I, this Court held, inter alia: (1) the Board waived sovereign immunity to the extent that its insurance policies covered claims in excess of $100,000 and less than $1,000,000; (2) the Board could not use sovereign immunity as a defense against constitutional and 42 U.S.C. § 1983 claims; and (3) the Board was immune from punitive damages claims because it is a governmental entity. Id.
On remand to the trial court after Ripellino I, the Board and the Trust Defendants filed motions for summary judgment for all non-constitutional claims and judgment on the pleadings for claims under 42 U.S.C. § 1983 and the North Carolina Constitution. The trial court entered orders for summary judgment and judgment on the pleadings. Plaintiffs appeal.

I. Summary Judgment as to the Non-Constitutional Claims
Plaintiffs argue the trial court erred by granting the Board's and the Trust Defendants' motions for summary judgment regarding the non-constitutional claims. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen.Stat. § 1A-1, Rule 56(c) (2005). "In ruling on such motion, the trial court must view all evidence in the light most favorable to the non-movant, taking the non-movant's asserted facts as true, and drawing all reasonable inferences in her favor." Glenn-Robinson v. Acker, 140 N.C.App. 606, 611, 538 S.E.2d 601, 607 (2000). On appeal, we review the granting of a summary judgment motion de novo. Granville Farms, Inc. v. County of Granville, 170 N.C.App. 109, 110-12, 612 S.E.2d 156, 158 (2005).
Plaintiffs specifically argue that the trial court erred by granting the Board's and the Trust Defendants' motions for summary judgment regarding the non-constitutional claims because the plaintiffs presented evidence on all the elements of a negligence claim and sovereign immunity is waived to the extent the Board's insurance policy provides coverage for claims in excess of $100,000 and less than $1,000,000. Plaintiffs additionally contend that their claim is within this monetary range and included in the broad wording of the Trust Agreement, which provides coverage for:
all or part of a Claim made or any civil judgment entered against any of its members... when such Claim is made or such judgment is rendered as Damages on account of any act done or omission made... in the scope of their duties as members of the local board of education or as employees.
The Board responds the trial court properly granted summary judgment because Exclusion Number 18 in the Coverage Agreement excludes coverage for "any Claim arising out of the ownership, maintenance, operation, use, loading or unloading of any Automobile" and Nicole was hit by a gate *229 while driving an automobile. Plaintiffs contend, however, that the malfunctioning of the gate could have occurred even if Nicole had not been driving a car and the gate would have injured her even if she had been walking or riding a bicycle. We agree with plaintiffs and reverse because the forecast of evidence leaves no material dispute over the fact that plaintiffs' injuries did not "arise out of" the use of an automobile.
Our Supreme Court has held that "the standard of causation applicable to the ambiguous `arising out of' language ... is one of proximate cause." State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 318 N.C. 534, 547, 350 S.E.2d 66, 74 (1986). "Proximate cause is a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed." Mattingly v. North Carolina R.R., 253 N.C. 746, 750, 117 S.E.2d 844, 847 (1961). Viewing the evidence in the light most favorable to defendants, no material dispute exists as to the proximate cause of plaintiffs' injury. Although defendants argue that plaintiff traveled in a car at the time of the incident, they have failed to show an automobile proximate cause, i.e., any action or omission by plaintiffs' automobile that would have resulted in a person of ordinary prudence foreseeing plaintiffs' injuries. Since there is no automobile proximate cause on these facts, plaintiffs' injury did not fall within the language of Exclusion 18, and we reverse the summary judgment in favor of the Board and remand for entry of summary judgment in favor of plaintiffs. Likewise, because the trial court erred in granting summary judgment in the Board's favor, it also erred in granting summary judgment in the Trust Defendants' favor, whose liability is derivative to the Board's liability. Accordingly, we reverse summary judgment in favor of the Trust Defendants and remand for entry of summary judgment in favor of plaintiffs.

II. Judgment on the Pleadings as to the Constitutional Claims
Plaintiffs argue that the trial court erred in granting judgment on the pleadings in favor of defendants regarding the state constitutional claims and United States constitutional claims under 42 U.S.C. § 1983. "The granting of judgment on the pleadings is proper when there does not exist a genuine issue of material fact, and the only issues to be resolved are issues of law. In reviewing a motion for judgment on the pleadings, [this] court must consider the evidence in the light most favorable to the non-moving party, accepting as true the factual allegations as pled by the non-moving party." Davis v. Durham Mental Health/Dev. Disabilities/Substance Abuse Area Auth., 165 N.C.App. 100, 105, 598 S.E.2d 237, 241 (2004) (citations omitted). Moreover, when reviewing a trial court's granting of a Rule 12(c) motion, this Court considers, "only the pleadings and exhibits which are attached and incorporated into the pleadings[.]" See id., 165 N.C.App. at 104, 598 S.E.2d at 240 (citations omitted).
Plaintiffs argue that their equal protection and due process rights have been violated under our federal and state constitution. Plaintiffs seek to use 42 U.S.C. § 1983 to enforce their federal constitutional rights. See Gonzaga University v. Doe, 536 U.S. 273, 285, 122 S.Ct. 2268, 2276, 153 L.Ed.2d 309, 322 (2002) ("Section 1983 ... provides a mechanism for enforcing individual rights `secured' elsewhere, i.e., rights independently secured by the Constitution and laws of the United States"). Plaintiffs' claims are based on their contentions that: (1) the Board has a "policy and custom of paying some claims but not paying others, when immunity could be raised in each one," and (2) the Board has "paid the property damage, but [has] asserted immunity in the remaining portion of Plaintiff's claim[.]"
They also seek to remedy these alleged deprivations directly under our state constitution, which states:
No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because *230 of race, color, religion, or national origin.
N.C. Const. art. I, § 19.
Plaintiffs specifically allege, in pertinent part:
15. Upon information and belief, in the past, the Association, Trust Defendants, and The Johnston County Board of Education could have raised the doctrine of immunity on many tort claims, but chose instead, for various reasons that will be proven at trial, to pay claims even in light of the immunity defense. Upon information and belief, the Association and Trust Defendants, in conjunction with The Johnston County Board of Education, would examine each claim to see if the immunity doctrine could be raised ... but thereafter some claims were nevertheless paid. This disparate treatment of claimholders is prohibited by the United States and North Carolina Constitutions, as well as 42 U.S.C. § 1983....
44. At all times pertinent hereto, [defendants]... in claiming immunity as to the Plaintiffs' claims for personal injury and medical expenses, ... have subjected these Plaintiffs to the deprivation of their equal protection and substantive due process rights under the United States Constitution, as enforced by 42 U.S.C. § 1983, and Article 1, [§] 19 of the North Carolina Constitution.
45. These Plaintiffs have been denied due process and equal protection of the law as the Defendants have paid the property damage, but have asserted immunity in the remaining portion of Plaintiffs' claim, but have, upon information and belief, customarily waived it for similarly situated individuals who have been compensated for tort damages.
46. [Defendants'] policy and custom of paying some claims but not paying others, when immunity could be raised in each one, has played a part in the violation of federal and state law. Additionally, the Defendants' conduct in this case, of paying the property damage, and assuming liability for the claim, and then refusing to pay the personal injury and medical expense portion of the claim, is a violation of Plaintiffs' federal and state constitutional rights, as a matter of law.
47. Upon information and belief, the [Defendants] have what amounts to be unbridled discretion to resolve claims filed with the local board of education.
48. As a result of the conduct of these Defendants, the Plaintiffs have been deprived of their right to recover for the bodily injury and medical expenses portion of the Ripellino claim.
49. The Fourteenth Amendment to the United States Constitution, Article I, [§] 19 of the North Carolina Constitution, and 42 U.S.C. § 1983 protect these Plaintiffs against intentional and arbitrary discrimination, being the conduct of the [defendants] as to these Plaintiffs.
50. As a proximate result of the Fifth and Fourteenth Amendments to the United States Constitution, Article 1.[§] 19 of the Constitution of the State of North Carolina, and 42 U.S.C. § 1983 violations by [defendants], the Plaintiffs are entitled to recover damages.
These allegations amount to more than "conclusory, unwarranted deductions of fact, or unreasonable inferences," Good Hope Hosp., Inc. v. N.C. Dep't. of Health and Human Serv., ___ N.C.App. ___, ___, 620 S.E.2d 873, 880 (2005) (citations omitted), and comply with the liberal standard of notice pleading applied in this State, under which "a claim is adequate if it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand its nature and basis and to file a responsive pleading." Mullis v. Sechrest, 347 N.C. 548, 554, 495 S.E.2d 721, 724 (1998) (citations omitted).
In regard to the judgment on the pleadings as to the claims under 42 U.S.C. § 1983, we consider an issue of first impression, whether a school board is a person within the meaning of 42 U.S.C. § 1983.
By federal statute,
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States *231 or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...
42 U.S.C. § 1983 (2005).
The Board argues that the trial court properly granted judgment on the pleadings because it is well-settled that neither the State of North Carolina nor its respective agencies are "persons" within the meaning of § 1983 when the remedy sought is monetary damages. In Will v. Michigan Dep't. of State Police, the United States Supreme Court held that states are not "persons" within the meaning of § 1983 and further noted that "in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration[.]" 491 U.S. 58, 66-67, 109 S.Ct. 2304, 2310, 105 L.Ed.2d 45, 55 (1989). In Howlett v. Rose, the Supreme Court reemphasized that "the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity are not subject to suit under § 1983 in either federal court or state court." 496 U.S. 356, 365, 110 S.Ct. 2430, 2437, 110 L.Ed.2d 332, 346 (1990). The opinion clarified which law applies: "[T]he elements of, and the defenses to, a federal cause of action [such as § 1983] are defined by federal law[,]" id., 496 U.S. at 375, 110 S.Ct. at 2442, 110 L.Ed.2d at 352, and "[t]o the extent that the [state] law of sovereign immunity reflects a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law." Id., 496 U.S. at 377-78, 110 S.Ct. at 2444, 110 L.Ed.2d at 354. Accordingly, we apply federal law to determine whether our local school boards should be considered "persons" within the meaning of § 1983.
In Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the United States Supreme Court considered "whether [an Ohio city's] Board of Education [was] to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or [was] instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." Id., 429 U.S. at 280, 97 S.Ct. at 572, 50 L.Ed.2d at 479. The Court noted that, "the answer depends, at least in part, upon the nature of the entity created by state law." Id. The Court considered that under Ohio law the "State" did not include "political subdivisions." Local school boards were expressly considered part of "political subdivisions," and therefore, were not part of the State. The Court also found significant that even though the local school boards received money and guidance from the State, they could also issue bonds and levy taxes. These facts lead the Supreme Court to conclude that the Ohio local school board was "more like a county or city than it is like an arm of the State." Id.
Although we recognize that Eleventh Amendment immunity is a separate inquiry from whether or not a given entity is a "person" within the meaning of § 1983, Eleventh Amendment immunity is, nonetheless, a consideration in determining congressional intent under § 1983. See Will, supra. We, therefore, consider the nature of the local school boards under North Carolina law. See Mt. Healthy, supra.
There is conflicting authority from our Supreme Court about whether local school boards are considered local entities or part of the State. Our Supreme Court has most recently held, "County and city boards of education serve very important, though purely local functions. The State contributes to the school fund, but the local boards select and hire the teachers, other employees and operating personnel. The local boards run the schools." Turner v. Gastonia City Bd. of Educ., 250 N.C. 456, 463, 109 S.E.2d 211, 216 (1959). In Turner, our Supreme Court also held that the Tort Claims Act does not apply to local school boards, except as amended by N.C. Gen.Stat. § 143-300.1, because "[i]n no sense may we consider the Gastonia City Board of Education in the same category as the State Board of Education and the State Highway & Public Works Commission." Id. See also Crump v. Bd. of Educ. of Hickory *232 Admin. Sch. Unit., 326 N.C. 603, 392 S.E.2d 579 (1990) (applying § 1983 to remedy a due process violation by a local school board when it is not clear if the issue of a local school board being "a person" within the meaning of § 1983 was raised by the parties).
However, in an earlier decision, our Supreme Court said:
The public school system, including all its units, is under the exclusive control of the State, organized and established as its instrumentality in discharging an obligation which has always been considered direct, primary and inevitable. When functioning within this sphere, the units of the public school system do not exercise derived powers such as are given to a municipality for local government, so general as to require appropriate limitations on their exercise; they express the immediate power of the State, as its agencies for the performance of a special mandatory duty resting upon it under the Constitution and under its direct delegation.
Bridges v. Charlotte, 221 N.C. 472, 478, 20 S.E.2d 825, 830 (1942). See also Rowan County Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 10-11, 418 S.E.2d 648, 655 (1992) (holding that the doctrine of nullum tempus applied to a local school board because it was "acting as an arm of the State and pursuing the governmental function of constructing and maintaining its schools." (Emphasis added)).
Since precedent is unclear whether school boards are considered part of the State, we consider the underlying structure of our school system. The North Carolina Constitution emphasizes the importance of education in our state: "Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools, libraries, and the means of education shall forever be encouraged." N.C. Const. art. IX, § 1. Our forefathers further provided: "The General Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools, which shall be maintained at least nine months in every year, and wherein equal opportunities shall be provided for all students." N.C. Const., art. IX, § 2(1).
Pursuant to these constitutional mandates, our General Assembly has enacted legislation for "[a] general and uniform system of free public schools ... throughout the State." N.C. Gen.Stat. § 115C-1. The State Board of Education is vested with the powers to oversee "general supervision and administration of the free public school system." N.C. Gen.Stat. § 115C-12. Local boards of education responsibilities include the duty "to provide adequate school systems within their respective local school administrative units." N.C. Gen.Stat. § 115C-47(1). By statute, local boards are corporate bodies that can sue and be sued. N.C. Gen.Stat. § 115C-40. Yet, the fact that our local school boards are corporate bodies "does not mean that the Legislature has waived immunity from liability for torts for such boards." Fields v. Durham City Bd. of Educ., 251 N.C. 699, 111 S.E.2d 910 (1960). It is noteworthy, however, that whether an entity has sovereign immunity under state law is not determinative of whether that entity is part of the State for purposes of federal law. For instance, entities, such as counties, have sovereign immunity under state law but are not part of the State under federal law. See Herring v. Winston-Salem/Forsyth County Bd. of Educ., 137 N.C.App. 680, 683, 529 S.E.2d 458, 461 ("As a general rule, the doctrine of governmental, or sovereign immunity bars actions against, inter alia, the state, its counties, and its public officials sued in their official capacity. The doctrine applies when the entity is being sued for the performance of a governmental function. But it does not apply when the entity is performing a ministerial or proprietary function"). But cf. Monell v. Dept. of Social Serv. of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611, 635 (1978) ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies").
Also relevant to our discussion is the manner chosen by our General Assembly to select members of local boards of education. The members are elected in local elections. N.C. Gen.Stat. § 115C-37(b). However, *233 there is some authority from our Supreme Court that members of local boards of education hold a public office under the State. See Edwards v. Bd. of Educ. of Yancey County, 235 N.C. 345, 70 S.E.2d 170 (1952) (holding a "member of the county board of education holds a public office under the State"). But see Turner, supra.
The financing of the public school system is provided by State, local, and federal governments. Our General Assembly propounded a state policy "to provide from State revenue sources the instructional expenses for current operations of the public school system as defined in the standard course of study." N.C. Gen.Stat. § 115C-408 (2005). Another constitutional provision provides that the General Assembly has authority to require local governments to contribute to the costs of education. N.C. Const. art. IX, § 2(2). In accordance with this Constitutional provision, our legislature has said, "It is the policy of the State of North Carolina that the facilities requirements for a public education system will be met by county governments." N.C. Gen.Stat. § 115C-408. Moreover, local school boards have authority to have taxes "levied on [their] behalf as a school supplemental tax" by the county. N.C. Gen.Stat. § 115C-511. However, "[t]he board of county commissioners may approve or disapprove of this request in whole or in part," id., although local school boards can bring suit to enforce a county's obligation to raise funds. N.C. Gen.Stat. § 115C-431.
In considering the Eleventh Amendment for purposes of determining congressional intent under § 1983, we are mindful of the "twin reasons" for the amendment's adoption: (1) "the States' fears that `federal courts would force them to pay their Revolutionary War debts, leading to their financial ruin,'" and (2) "the integrity retained by each State in our federal system," which includes the States' sovereignty from suit. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 39, 115 S.Ct. 394, 130 L.Ed.2d 245, 255 (1994) (quotations and citations omitted).
Although both state and local governments contribute to our school systems, there is no argument before us that any recovery in this matter would come directly from our State treasury. Rather, the local school board is a corporate entity that can sue and be sued, N.C. Gen.Stat. §§ 115C-40, and our legislature has empowered local boards to waive sovereign immunity by obtaining insurance, N.C. Gen.Stat. § 115C-42 (2005), which the Johnston County board has done in this case. Moreover, as to the issue of maintaining the integrity of North Carolina within the federal system, we are convinced that suit against a local school board that performs "very important, though purely local functions," see Turner, supra, and that is its own corporate body separately liable from the State will not hinder our State's integrity within the federal system. Accordingly, we hold that a local school board is a "person" within the meaning of § 1983.
In regard to the state constitutional claims, the Board argues that plaintiffs cannot seek redress under the state constitution because "plaintiffs have an adequate state remedy. But for the Board's assertion of immunity, plaintiffs' cause of action in negligence would redress the complained of injury." Our Supreme Court has said, "[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." Corum v. Univ. of N.C., 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). In considering whether an adequate state remedy exists, we consider whether, if any state remedy, if successful, would compensate a plaintiff for the same injury alleged in the direct constitutional claim. Rousselo v. Starling, 128 N.C.App. 439, 447, 495 S.E.2d 725, 731 (1998).
The Board's argument confuses the issues presented. Plaintiffs have claimed damages for both negligence and "intentional and arbitrary discrimination" by the Board against the tort claim. Plaintiffs seek to remedy the injury incurred by the alleged arbitrary and unequal application of the Board's immunity. There is no adequate remedy for such conduct in a negligence action or in any other state law cause of action. Accordingly, we hold that plaintiffs have no adequate state remedy and may proceed directly under the State constitution.
*234 Having determined that a local school board is a person within the meaning of § 1983 and that plaintiffs have no adequate state remedy preventing them from proceeding under the State constitution, we consider whether judgment on the pleadings was otherwise appropriate. In Dobrowolska v. Wall, this Court held that summary judgment was inappropriate where there was no evidence in the record that the City of Greensboro applied a set criteria in deciding when to settle claims. 138 N.C.App. 1, 18, 530 S.E.2d 590, 602 (2000). Similarly, in this case, viewing the evidence in the light most favorable to the plaintiffs, there is a material issue of fact as to whether the Board applied a reasonable criteria to its evaluation of claims. See Dobrowolska, supra. Accordingly, judgment on the pleadings was inappropriate as to the constitutional claims. See Davis, supra ("The granting of judgment on the pleadings is [only] proper when there does not exist a genuine issue of material fact, and the only issues to be resolved are issues of law").
We additionally address the dissent's reliance on Clayton v. Branson, 170 N.C.App. 438, 613 S.E.2d 259 (2005). Branson, in pertinent part, dealt with the issue of whether a trial court properly denied a defendant's motion for JNOV regarding claims arising under 42 U.S.C. § 1983. This Court held that on the Branson facts the trial court erred in denying the defendant's motion for JNOV. The standard of review for a motion for JNOV and a motion for judgment on the pleadings are substantially different. When considering a motion for JNOV:
all the evidence must be considered in the light most favorable to the nonmoving party. The nonmovant is given the benefit of every reasonable inference ... from the evidence and all contradictions are resolved in the nonmovant's favor. If there is more than a scintilla of evidence supporting each element of the nonmovant's case, the motion for ... judgment notwithstanding the verdict should be denied.
Branson, 170 N.C.App. at 442, 613 S.E.2d at 263-64 (citations omitted). As we have previously stated, however, judgment on the pleadings is only proper when there are no genuine issues of material fact, and the only issues to be resolved are issues of law. Davis, supra. In this case, judgment on the pleadings was inappropriate because there are genuine issues of material fact presented by the pleadings as to whether defendants applied an appropriate, non-arbitrary criteria on an equal basis to all claimants. Accordingly, we remand this issue to the trial court.
Reversed and remanded.
Judge HUDSON concurs.
Judge LEVINSON concurs in part and dissents in part with a separate opinion.
LEVINSON, Judge concurring in part and dissenting in part.
I concur with the conclusion of the majority opinion that plaintiff's injuries did not fall within Exclusion 18 of the Coverage Agreement, and that the trial court's order must be reversed and remanded for entry of summary judgment in favor of plaintiffs in this respect. However, I disagree with the conclusion that the constitutional claims survived defendants' Rule 12(c) motions, and therefore respectfully dissent from these portions of the majority opinion. Because it is unnecessary to do so, I make no comment on whether a local school board is a "person" within the meaning of 42 U.S.C. § 1983 (2005).
Unlike the majority, I conclude the trial court correctly granted defendants' N.C. Gen.Stat. § 1A-1, Rule 12(c) (2005) motion for judgment on the pleadings with respect to the constitutional claims, and would therefore affirm the trial court's order in this respect.
"`A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain.'" Daniels v. Montgomery Mut. Ins. Co., 320 N.C. 669, 682, 360 S.E.2d 772, 780 (1987) (quoting Ragsdale v. Kennedy, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974)). "When a motion for judgment on the pleadings is made, the trial court is required to view the facts and permissible inferences in the light most favorable to the non-moving party, and all well pleaded factual allegations in the non-moving *235 party's pleadings must be taken as true." Burton v. Kenyon, 46 N.C.App. 309, 310, 264 S.E.2d 808, 809 (1980).
A motion for judgment on the pleadings has some similarities to motions for dismissal for failure to state a claim for relief, under N.C. Gen.Stat. § 1A-1, Rule 12(b)(6) (2005), and summary judgment under N.C. Gen.Stat. § 1A-1, Rule 54 (2005). See Floraday v. Don Galloway Homes, 340 N.C. 223, 224, 456 S.E.2d 303, 304 (1995) ("[P]ursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure, defendant filed a motion for judgment on the pleadings, requesting dismissal of the action on the grounds that the complaint failed to state a claim upon which relief could be granted."); Kessing v. Mortgage Corp., 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971) ("Motions under Rules 12(b)(6) and 12(c) can be treated as summary judgment motions, the difference being that under Rules 12(b)(6) and 12(c) the motion is decided on the pleadings alone, while under Rule 56 the court may receive and consider various kinds of evidence."). "The principal difference... is that a motion under Rule 12(c)... is properly made after the pleadings are closed while a motion under Rule 12(b)(6) must be made prior to or contemporaneously with the filing of the responsive pleading. Robertson v. Boyd, 88 N.C.App. 437, 440, 363 S.E.2d 672, 675 (1988). Additionally, in addressing a Rule 12(c) motion, the trial court "may consider ... `only the pleadings and exhibits which are attached and incorporated into the pleadings[.]'" Davis v. Durham Mental Health/Dev. Disabilities Area Auth., 165 N.C.App. 100, 104, 598 S.E.2d 237, 240 (2004) (quoting Helms v. Holland, 124 N.C.App. 629, 633, 478 S.E.2d 513, 516 (1996)) (citation omitted).
Plaintiffs herein sought damages "pursuant to 42 U.S.C. §§ 1983, 1988, the Fifth, the Fourteenth Amendments to the United States Constitution and Article I, [§ ] 19, of the Constitution of the State of North Carolina." I conclude that their complaint fails to set forth facts that, accepted as true and allowing all reasonable inferences from those facts, would entitle them to relief under any legal theory, or would demonstrate a genuine issue of material fact.
In reaching this conclusion, I am mindful that in considering a Rule 12(c) motion, "`[w]e are not required ... to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" Good Hope Hosp. v. Dept. of Health, ___ N.C.App. ___, ___, 620 S.E.2d 873, 880 (2005) (quoting Veney v. Wyche, 293 F.3d 726, 730 (4th Cir.2002)). "Though the trial court is obligated to take all of the allegations of the complaint as true in ruling upon the motion, it is elementary that the trial court must draw its own legal conclusions from those facts, and that it may draw conclusions which may differ from those advocated by plaintiffs." Affordable Care, Inc. v. N.C. State Bd. of Dental Exam'rs, 153 N.C.App. 527, 532, 571 S.E.2d 52, 57 (2002). See also, Lewis v. Salem Academy and College, 23 N.C.App. 122, 127, 208 S.E.2d 404, 407 (1974) (upholding dismissal under Rule 12(b)(6) where alleged facts did not state ground for relief and "[o]ther portions of the complaint also contain allegations which, in our view, amount to no more than plaintiff's own unwarranted deductions or conclusions of law").
Thus, this Court's analysis of whether the trial court erred by dismissing plaintiffs' complaint requires us to distinguish between factual allegations and conclusions of law. "Findings of fact are statements of what happened in space and time." State ex rel. Utilities Comm. v. Eddleman, 320 N.C. 344, 351, 358 S.E.2d 339, 346 (1987). "Matters of judgment are not factual; they are conclusory and based ultimately on various factual considerations.... [Facts] can be objectively ascertained by one or more of the five senses or by mathematical calculation." State ex rel. Utilities Comm. v. Public Staff, 322 N.C. 689, 693, 370 S.E.2d 567, 570 (1988).
The majority cites the following allegations of plaintiffs' complaint in support of its conclusion that the trial court erred by dismissing plaintiffs' claim:
15. Upon information and belief, in the past, the Association, Trust Defendants and the Johnston County Board of Education could have raised the doctrine of immunity on many tort claims, but chose instead, for various *236 reasons that will be proven at trial, to pay claims even in light of the immunity defense. Upon information and belief, the Association, Trust Defendants, in conjunction with the Johnston County Board of Education, would examine each claim to see if the immunity doctrine could be raised. Upon information and belief, if the immunity doctrine would be raised, it was raised, but thereafter some claims were nevertheless paid. This disparate treatment of claim-holders is prohibited by the United States and North Carolina Constitutions, as well as 42 U.S.C. § 1983.
...
44. At all times pertinent hereto, [defendants]... in claiming immunity as to the Plaintiffs' claims for personal injury and medical expenses, ... have subjected these Plaintiffs to the deprivation of their equal protection and substantive due process rights under the United States Constitution, as enforced by 42 U.S.C. § 1983, and Article I, [§ ] 19 of the North Carolina Constitution.
45. These Plaintiffs have been denied due process and equal protection of the law as the Defendants have paid the property damage, but have asserted immunity in the remaining portion of Plaintiffs' claim, but have, upon information and belief, customarily waived it for similarly situated individuals who have been compensated for tort damages.
46. [Defendants'] policy and custom of paying some claims but not paying others, when immunity could be raised in each one, has played a part in the violation of federal and state law. Additionally, the Defendants' conduct in this case, of paying the property damage, and assuming liability for the claim, and then refusing to pay the personal injury and medical expense portion of the claim, is a violation of Plaintiffs' federal and state constitutional rights, as a matter of law.
47. Upon information and belief, the [Defendants] have what amounts to be unbridled discretion to resolve claims filed with the local board of education.
48. As a result of the conduct of these Defendants, the Plaintiffs have been deprived of their right to recover for the bodily injury and medical expenses portion of the Ripellino claim.
49. The Fourteenth Amendment to the United States Constitution, Article I, [§ ] 19 of the North Carolina Constitution, and 42 U.S.C. § 1983 protect these Plaintiffs against intentional and arbitrary discrimination, being the conduct of the [defendants] as to these Plaintiffs.
50. As a proximate result of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, [§ ] 19 of the Constitution of the State of North Carolina, and 42 U.S.C. § 1983 violations by [defendants], Plaintiffs are entitled to recover damages[.]
In reviewing the trial court's dismissal under Rule 12(c), I rely in part on this Court's recent opinion in Clayton v. Branson, 170 N.C.App. 438, 613 S.E.2d 259 (2005), disc. review denied, 360 N.C. 174, 625 S.E.2d 785 (2005). The opinion in Branson sets out a comprehensive legal "roadmap" for review of constitutional claims based on a governmental unit's settlement policies and practices. Although (1) the instant case involves a Rule 12(c) motion while Branson reviewed the trial court's ruling on a motion for JNOV, and (2) different facts are present in each case, I conclude that Branson resolves certain legal issues raised in both cases.
Plaintiffs' factual allegations, considered singly or together, in conjunction with inferences logically drawn from these facts, do not state a claim for relief. Plaintiffs assert in paragraph No. 15 that defendants examined each claim to determine if the defense of governmental immunity would be available. Plaintiffs allege, in paragraphs Nos. 15, 45, and 46, that plaintiffs have paid damages to certain tort claimants, but would not pay plaintiffs' claim. And, in paragraphs Nos. 45 and 46, plaintiffs allege that defendants paid *237 part of their claim, but did not pay all of it. These factual allegations, taken as true, do not give rise to liability as discussed below.
Plaintiffs further allege that by settling some claims defendants thereby "waived" the defense of governmental immunity, and that by refusing to offer plaintiffs a settlement, defendants were "raising" the defense of governmental immunity. Plaintiffs' characterization of defendants' actions is a conclusion of law, which the court is not required to accept as true, and is, in any event, simply an erroneous conclusion of law.
Branson observed that, as an affirmative defense, "governmental immunity cannot, by definition, be raised until there is a lawsuit to defend against." Id. at 449, 613 S.E.2d at 268. On this basis, Branson held that "the execution of settlement contracts between a municipality and tort claimants do not constitute waivers of the affirmative defense of governmental immunity." Id. This reasoning is applicable to the instant case. Accordingly, plaintiffs' allegation, that defendants may have compensated other tort claimants, does not support an inference that defendants raised the defense of immunity in response to a lawsuit, nor that they subsequently waived the defense.
Plaintiffs herein also state that defendants have "unbridled discretion" to decide whether to settle claims. In other words, plaintiffs complain that defendants' authority over tort claims is not subject to regulation, and is constrained only by state and federal constitutional prohibitions on discrimination. Plaintiffs further assert that defendants' "unbridled discretion" violates their constitutional right to substantive and procedural due process. Again, this is not a statement of fact, but is a legal conclusion that need not be accepted at face value.
Plaintiffs' position, that defendants' freedom to decide when to compensate claimants violates their constitutional rights, rests on the premise that there is a right to recover damages that cannot be abrogated without procedural due process, and that such right must be administered according to definite objective criteria. "However, § 1983 does not create constitutional rights, and is available only to enforce constitutional rights whose source may be identified[.]" Id. at 452, 613 S.E.2d at 269. Consequently, plaintiffs' statement that defendants enjoy the discretion to decide when to settle claims does not support recovery unless plaintiffs also allege facts supporting an inference that they have a constitutionally protected legal right at issue.
As discussed in Branson, the right to procedural due process arises only upon the existence of a constitutionally protected property right and, absent a valid waiver of governmental immunity, a plaintiff has no "right" to recover damages from a governmental defendant. Therefore, plaintiffs clearly have no protected property right that would give rise to procedural due process rights:
Plaintiff herein claims a constitutionally protected property interest in his right to recover damages from the city. .... As discussed above, absent a waiver of governmental immunity by the purchase of liability insurance, plaintiff is barred from maintaining a lawsuit against the city. As plaintiff has no right to maintain a suit against the city, under the facts set forth in this opinion, he cannot have a "constitutionally protected" property right to do so.
Id. at 453, 613 S.E.2d at 270. Inasmuch as plaintiffs have no constitutionally protected right to recover from defendants, and therefore have no procedural due process rights, defendants' freedom to exercise discretion does not support an inference that plaintiffs rights to procedural due process are being violated:
[I]t is undisputed that settlement offers, if any, are in the discretion of the city. Simple logic dictates that a party cannot have a right or entitlement to a benefit whose dispensation rests entirely in the discretion of the city[.] ... Accordingly, the city's discretion to choose whether to settle with a claimant is not a constitutional violation of procedural due process[.]
Id.
Moreover, defendants' payment of damages to certain tort claimants does not constitute the granting of a "right" akin to a person's right to, e.g., a license issued by a *238 government zoning board or the receipt of welfare benefits. In each of these circumstances a governmental unit, although not constitutionally required to do so, has extended a right to its citizens, subject to conditions articulated by statute or ordinance. However, in the present case, no "right" to compensation is identified. Where the existence of a right is clearly established, its administration may not depend on the whim or unlimited discretion of a government official. Dobrowolska v. Wall, 138 N.C.App. 1, 530 S.E.2d 590 (2000). However, Dobrowolska did not hold that, whenever a state or local governmental employee takes any action, makes a decision, or compensates a citizen for any loss, that a new "right" is thereby established, or that such decisions are per se unconstitutional if they are discretionary decisions by a government employee.
In the instant case, I conclude that plaintiffs failed to allege facts that would support an inference that they enjoyed a constitutionally protected right to compensation by defendants. The factual allegations of plaintiffs' complaint, reduced to their essentials, are that:
1. Defendants examine tort claims against them to ascertain the applicability of the affirmative defense of governmental immunity to the facts of the case.
2. Defendants customarily pay damages to some tort claimants, but not to all of them.
3. Defendants have the power to decide if and how they will offer a settlement to a tort claimant.
4. Defendants paid part of the damages asserted by plaintiffs, but not the whole claim.
These facts do not give rise to liability, and the remaining paragraphs from plaintiffs' complaint cited above consist of unwarranted legal conclusions that plaintiffs attempt to draw from these facts. For example, plaintiffs make the conclusory statements that defendants' conduct violates their rights to substantive due process, and that defendants violated their rights under the Equal Protection Clause by denying their claim but paying damages to "similarly situated" claimants.
It is true that appropriate factual allegations can support a claim of violation of Equal Protection rights, based on disparate treatment of similarly situated individuals:
[M]ost laws differentiate in some fashion between classes of persons. The Equal Protection Clause ... simply keeps governmental decision-makers from treating differently persons who are in all relevant respects alike.
Branson, 170 N.C.App. at 457, 613 S.E.2d at 272 (quoting Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1, 12 (1992)). However, in the instant case, as in Branson, plaintiffs "[did] not identify any classification upon which [they were] denied equal protection[,] ... [or allege] the use of any inherently suspect criteria, such as race, religion, or disability status." Branson, id. Indeed, plaintiffs wholly fail to indicate, even in the most general terms, the kind of discrimination they allege, or the nature of the "relevant respects" in which other tort claimants were allegedly "similarly situated." Consequently, the allegations of their complaint provide no notice to defendants as to what actions or transactions are allegedly discriminatory. Do plaintiffs mean to suggest that defendants only compensate tort claimants if they are from a particular part of the county; are school employees; belong to a particular political party; are of a certain race or gender; go to church with a school board member; or only if the damages claimed are below a certain amount? Because plaintiffs fail to allege any facts, there is no way to know.
The standard for sufficiency of a complaint under our theory of "notice pleading" has been stated as follows:
In order for plaintiffs' complaint to have withstood defendant's motion to dismiss, the complaint must ... provide defendant sufficient notice of the conduct on which the claim is based to enable defendant to respond and prepare for trial[.] ... For the purpose of ruling on a motion to dismiss... conclusions of law or unwarranted deductions of fact are not admitted. Under the notice theory of pleadings, a *239 statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial[.]

Hill v. Perkins, 84 N.C.App. 644, 647, 353 S.E.2d 686, 688 (1987) (emphasis added) (citations omitted). "`In reviewing a dismissal of a complaint for failure to state a claim, the appellate court must determine whether the complaint alleges the substantive elements of a legally recognized claim and whether it gives sufficient notice of the events which produced the claim to enable the adverse party to prepare for trial.'" Toomer v. Garrett, 155 N.C.App. 462, 468, 574 S.E.2d 76, 83 (2002) (quoting Brandis v. Lightmotive Fatman, Inc., 115 N.C.App. 59, 62, 443 S.E.2d 887, 888 (1994)).
In the instant case, the "fallacy with plaintiffs'... complaint, is that statements of law... substitute for alleging sufficient facts from which it may be determined what liability forming conduct is being complained of and what injury plaintiffs have suffered." Hill, 84 N.C.App. at 648, 353 S.E.2d at 689. I conclude that plaintiffs failed to state a claim for violation of their equal protection rights, even under the liberal standards of notice pleading.
Finally, I respectfully observe that the majority opinion's statement that the "allegations [in the complaint] amount to more than `conclusory, unwarranted deductions of fact, or unreasonable inferences'" fails to meet the legal implications of Branson. I conclude that, under Branson and cases cited therein, plaintiffs failed to allege facts that, if proved, would entitle them to relief under their constitutional claims. Accordingly, I would uphold the trial court's dismissal of plaintiffs' constitutional claims.